Demetrius Minor 494475E
215 S. Burlington Rd.
Bridgeton, NJ 08302

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Demetrius Minor | : | Civil Action_____ |
| Plaintiff, | : | |
| | : | |
| V. | : | **CIVIL ACTION** |
| Sgt. David Dilks, | : | Verified |
| individually and officially | : | COMPLAINT |
| c.o. Mark Goncharov, | : | |
| individually and officially | : | JURY DEMAND |
| Sgt. John Khulen, | : | |
| Individually and officially: | : | |
| Lt. Mark Weinstein, | : | |
| Individually and officially | : | |
| Jane and John Does | ! | |
| John Powell, individually & officially | : | |

RECEIVED
SEP 2 3 2019
AT 8:30
WILLIAM T. WALSH
CLERK

1. Plaintiff, Demetrius Minor, (hereinafter "PLAINTIFF"), is a prisoner confined at the SOUTH WOODS STATE PRISON 215 S. Burlington Rd. Bridgeton NJ 08302 under SBI# 494475E. He is currently serving a sentence of thirty years for Manslaughter.

2. Defendant Sgt. John KHULEN (hereinafter " KHULEN") is an individual who at all times relevant hereto was employed by New Jersey Department of Corrections as a corrections officer Sergeant with an address for services of South Woods State Prison 215 S. Burlington Rd. Bridgeton NJ 08302 and/was responsible for the care, supervision and humane treatment of prisoners confined at South Woods State Prison and had an ethical and legal responsibility to pursue his duties diligently with an even hand and to abstain from any conduct which constituted a crime, fraud, malice, abuse of process, abuse of power, physical abuse, obstruction of justice and/or willful misconduct and had direct

1

personal involvement in the wrongs enumerated in this Complaint. He is a state actor
acting under color of state law.

3.  Defendant Sgt.  David Dilks (hereinafter " Dilks ") is an individual who at all times
    relevant hereto was employed by New Jersey Department of Corrections as a corrections
    officer  Sergeant with an address for services of South Woods State Prison 215 S.
    Burlington Rd. Bridgeton NJ 08302 and/was responsible for the care, supervision and
    humane treatment of prisoners confined at South Woods State Prison and had an ethical
    and legal responsibility to pursue his duties diligently with an even hand and to abstain
    from any conduct which constituted a crime, fraud, malice, abuse of process, abuse of
    power, physical abuse, obstruction of justice and/or willful misconduct and had direct
    personal involvement in the wrongs enumerated in this Complaint. He is a state actor
    acting under color of state law.

4.  Defendant Lt.  Mark Weinstein (hereinafter " Weinstein ") is an individual who at all
    times relevant hereto was employed by New Jersey Department of Corrections as a
    corrections officer  Lieutenant with an address for services of South Woods State Prison
    215 S. Burlington Rd. Bridgeton NJ 08302 and/was responsible for the care, supervision
    and humane treatment of prisoners confined at South Woods State Prison and had an
    ethical and legal responsibility to pursue his duties diligently with an even hand and to
    abstain from any conduct which constituted a crime, fraud, malice, abuse of process,
    abuse of power, physical abuse, obstruction of justice and/or willful misconduct and had

direct personal involvement in the wrongs enumerated in this Complaint. He is a state

actor acting under color of state law.

5. Defendant  Mark Goncharov (hereinafter " Goncharov ") is an individual who at all times

relevant hereto was employed by New Jersey Department of Corrections as a corrections

officer  with an address for services of South Woods State Prison 215 S. Burlington Rd.

Bridgeton NJ 08302 and/was responsible for the care, supervision and humane treatment

of prisoners confined at South Woods State Prison and had an ethical and legal

responsibility to pursue his duties diligently with an even hand and to abstain from any

conduct which constituted a crime, fraud, malice, abuse of process, abuse of power,

physical abuse, obstruction of justice and/or willful misconduct and had direct personal

involvement in the wrongs enumerated in this Complaint. He is a state actor acting under

color of state law.

6. Defendant JOHN POWELL (hereinafter "POWELL") is an individual who is employed

by Defendant New Jersey State Prison as Administrator with an address of  South Woods

State Prison 215 S. Burlington Rd. Bridgeton NJ 08302 and/was responsible for the

administration and operation of the New Jersey State Prison, including the care,

supervision and humane treatment of prisoners confined at Defendant South Woods State

Prison as well as the policy making and ensuring that policies and procedures are properly

implemented including, but not limited to ensuring that prisoners at the South Woods

State Prison New Jersey State Prison are held in a safe and secure manner, and had an

ethical and legal responsibility to purse his duties diligently with an even hand and to

abstain from any conduct which constituted a crime, fraud, malice, abuse of power, abuse

of process, obstruction of justice and/or willful misconduct and/or the cover-up of such

conduct, and had direct personal involvement and/or actual knowledge and acquiescence

in the wrongs enumerated in this Complaint. He is a state actor acting under color of state law.

7. Defendants JOHN AND JANE DOES 1 - 30 are/were/is/was individual(s) who at all times relevant hereto, were/was employed by SWSP and/or NJDOC and/was responsible for the care, supervision and humane treatment of prisoners confined at SWSP and/or the policy making and ensuring that policies and procedures are properly implemented including, but not limited to ensuring that prisoners at the SWSP receive adequate and safe, and had an ethical and legal responsibility to purse his/her duties diligently with an even hand, and to abstain from any conduct which constituted a crime, fraud, malice, physical abuse, obstruction of justice and/or willful misconduct and/or the cover-up of such conduct, and had direct personal involvement and/or actual knowledge and acquiescence in the wrongs enumerated in this Complaint. They/he/she are/is state actor(s) acting under color of state law.

## NATURE OF ACTION

8. This is an action against the aforementioned Defendants for inadequate, deliberate indifference, negligence, civil rights violations, retaliation, state intentional infliction of emotional distress, state constitutional claims, eighth amendment  violations, first amendment violations.

## JURISDICTION AND VENUE

9.      Congress enacted the Civil Rights Act to redress the deprivation, under color of state law, of rights secured by the laws and Constitution of the United States of America. 42 U.S.C. Section 1983. The New Jersey Legislature enacted the New Jersey Civil Rights Act to redress violations of rights secured by the laws and Constitution of the United States and the Constitution of the State of New Jersey. N.J.S.A. 10:6-1 et seq.

**COUNT ONE**
**FIRST AMENDMENT VIOLATION**
**RETALIATION FOR ENGAGING IN A CONSTITUTIONAL**
**PROTECTED ACTIVITY**

10.     In the month of June 2019, Demetrius Minor hereinafter referred to as "PLAINTIFF" engaged in submitting proposals to the South Woods State Prison Administration and Custody staff with regards for cell and unit changes as applied to those who identified as Gay.

11.     Plaintiff was working on this proposal with another inmate Martinez SBI# 321613-G who at all times relevant to this complaint was assigned to work in the South Woods State Prison Law Library.

12.     Plaintiff was assigned a work detail in the prison's law library where his duties consisted of pre-paring legal documents and drafting statements as well as assisting inmates with research for their cases.

13.     Plaintiff in conjunction with another inmate Martinez 0321613-G initially begun helping inmate Rehaam Dupriest with an administrative complaint regarding the way in which inmates who identified as Gay, Bi-sexual or Transgender was being housed in February Of 2019.

14.    Plaintiff and Inmate Martinez drafted a proposal for
inmate Dupriest in the months of January 2019 and February
2019, the proposal was than forwarded to the Ombudsman's
office which is a external division of the New Jersey
Department of Corrections.

15.    Subsequently this proposal that was created by
Plaintiff and Nestor Martinez was reviewed by the Ombudsman
office and the New Jersey Department of Corrections.

16.    Inmate Martinez begun taking paralegal courses with a
non-profit form his country which granted him a educational
grant to complete U.S. Based Paralegal certificate courses.

17.    Part of the requirements from the non-profit was that
Inmate Martinez receive help from a DOC certified Paralegal
and be enrolled in the educational department. (See
Attachment) (Exhibit D)

18.    Inmate Martinez followed policy and submitted a request
to the education Department where Mr. Mettelow was the
supervisor at.

19.     Several Weeks following he was approved to work in the
        law library as a Clerk. In addition the education Department
        recommended to Lt. Hays that Plaintiff be moved to 11R where
        there was a D.O.C Certified paralegal wiling to tutor him.

20.     Lt. Hayes reviewed such request and Approved the
        housing assignment change. ON 1/16/19 Inmate Martinez was
        moved to unit 11R And begun his educational courses as well
        as continued to work on the proposal for those who
        identified as Gay, bisexual, transgender, intersex, or
        gender non-conforming.

21.     Both Plaintiff and Nestor Martinez was assigned to work
        in the Law Library during this time and were performing the
        their official Duties helping inmates and assisting them
        with what ever duties that was delegated to them.

22.     The New Jersey Administrative Code Permits inmates to
        help other inmates with legal work. Specifically New jersey
        Administrative code 10A:6-2.12 (b) Inmates with the
        following job titles and who have successfully completed the
        inmate paralegal courses are considered paralegals;

        a. Law Library clerk;
        b. Legal Assistant; and
        c. Legal Paraprofessional.

23.    In the Month of June 2019 Inmate Martinez was granted reduced custody and sent to a lower level of custody.

24.    While at the minimum security unit Inmate Martinez and Plaintiff was corresponding about the proposal and maintaining contact about the constant events within the prison.

25.    Inmate Martinez SBI# 321613G begun to contest the conditions at the camps and requested to return to medium level of care in efforts to continue his legal studies.

26.    Plaintiff received letters from Inmate Martinez stating that the min. unit did not have a adequate Law Library or educational Department which was precluding him from finishing his studies.

27.    Plaintiff, explained to Inmate Martinez SBI# 321613-G that he should document his complaints on the Jpay Kiosk to the supervisor of education (David Metelow).

28.    In the month of June and July, South Woods State Prison begun having a substantial amount of refusing to lock in charges being issued. Plaintiff begun to work with the Paralegals who were assigned to Courtline in efforts to

gather more information about the amount of refusing to
lock-in charges being issued.


29.    Plaintiff, learned that custody was refusing to move
inmates who identified as Gay into other cells even when
they did not feel safe.

30.    Defendant Weinstein, permitted custody staff to refuse
inmates the opportunity to request housing unit changes when
they felt unsafe.

31.    As a direct result of custody's refusal to consider
LGBT inmates for housing changing when safety issues arose,
Plaintiff and others were forced to refuse to lock in.


32.    A substantial amount of the refusal to lock in charges
that were issued were because of custody's and Defendant
Weinstein, Dilks and John Doe's refusal to move inmates.


33.    Plaintiff discovered that the prison was bound by the
Prison Rape Elimination Act (PREA) which was a Federal
Mandate that forced prisons to adopt standards that were
designed to reduce  and prevent sexual assault in prisons.


34.    Part of the PREA mandate 28 CFR Ch. 1 §115.30 compels
the prison to screen inmates for risk of victimization and
abusiveness during an intake screening.

35.    This same PREA mandate forces the prison to consider whether "the inmate has a mental physical, or developmental disability; the age of the inmate, the physical build of the inmate; and other criteria's such as but not limited to Whether the inmate is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender non-confirming.

36.    Plaintiff, discovered that the prison was failing to assess inmates who identified as Gay, bisexual, transgender, intersex, or gender non-conforming.

37.    As a result of the Prison not having a policy and procedure in place for inmates who identified as Gay, bisexual, transgender, intersex, or gender non-conforming to be housed or how to be identified by prison officials. Inmates who did have alternative life styles were often preyed upon and not given no kind of consideration as to their sexual orientation.

38.    Custody does not permit inmates  who identified as Gay the opportunity to be considered for cell and unit transfers when they feel as if they were being victim of harassment or fearing their safety.

Demetrius Minor                          Page 12                          9/18/2019

39.     As a direct result of custody's common practice;
        inmates who identified as gay were being forced to endure
        abuse and live in constant fear for their life, with no way
        to be moved without going to solitary.

40.     Custody has advised inmates that the only way they
        will be moved from their cell will being by going to
        solitary confinement.

41.     Because of Defendant Weinstein, Dilks and others
        refusal to move inmates or at the very least consider
        inmates for unit or cell changes, inmates such as plaintiff
        have been provided with no other way except refusing to
        lock-in to move.

42.     As a direct result of Defendants Weinstein, Dilks
        Khulen Actions, inmates who identify as Gay have had to
        endure harassment and at times assault.

43.     Plaintiff, begun to advocate and write grievance
        for the inmates that he was helping who were gay. Many of
        these inmates were being victimized by their cell mates and
        living under constant fear of being sent to solitary if they
        told.

44.     Upon information and belief, inmates who did not
        report the abuse did not do so because of the common

practice that custody engaged in of sending inmates to solitary simply for requesting to speak to the sergeant.

45.        The statements from Custody showed a disregard for inmates safety and contributed to the constant toleration of sexual abuse and harassment at South Woods State Prison.

46.    As a Direct result of Defendants Weinstein, Dilks and Khulen and Jane and John does inmates who identify as Gay, bisexual, transgender, intersex, or gender non-conforming have been forced to live in environments where they are targets.

47.    As a direct result of the Defendants and jane and john does, Plaintiff who is openly Gay, has been forced to live in a environment that is by nature homophobic and causing him psychological harm.

48.    Plaintiff, has suffered psychological harm, and has had panic attacks as well as nervous break downs.

49.    In June Defendant Weinstein, became the first shift lieutenant for facility one, his duties included but were not limited to supervising the custody staff on the facility, maintaining a safe and secure housing units 1 and

2; as well as ensuring that all inmates were being treated fairly and with dignity.

50.     Defendant Weinstein replaced Lt. Hayes who had once granted cell moves to those who had legitimate reasons and request.

51.     LT. Weinstein was made aware of Plaintiff's proposal when inmate Minor mailed it to the Prisons administration. The Proposals included information explaining why those who identified as Gay were at risk of harm and deserved to be consider for unit transfers. The proposal also requested that the prison consider, allowing all inmates who remained with positive disciplinary jackets the opportunity to change cells.

52.     Plaintiff, attempted to not only explain to administration why those who identified as Gay, bisexual, transgender, intersex, or gender non-conforming  were at higher risk of sexual assault and harassment than other inmates. Plaintiff, requested that the administration consider adding a procedure or policy that could allow cell changes.

53.    Defendant Weinstein, responded to another inmate Allen
        Rivera Grievance about not allowing inmates who identified
        as gay to move cells by saying "Yes, Correct I do not permit
        cell changes, and what you have written about is not a
        safety concern.

54.    Plaintiff, filled Grievances via the Jpay Kiosk system,
        to administration and to central offices, with regards to
        the Custody's staff's refusal to consider request for
        inmates who identified as gay to change cells or units when
        they believed that they were being harmed or  harassed.

55.    Plaintiff submitted inquires to Administration,
        Appealed those inquires and than filed grievances
        subsequently appealing those inquires pursuant to prison
        polices. Henceforth this issue was exhausted to the prison
        administration as well as to the custody staff.

56.    In the month of July Plaintiff begun assisting another
        inmate with an administrative appeal. The inmate that
        Plaintiff was assisting was placed in a cell with an inmate
        who identified as Gay. The inmate requested to speak with
        the Sergeant and was denied. Subsequently the inmate was
        placed in solitary for refusing to lock in.

Demetrius Minor                         Page 16                              9/18/2019

57.    When inmates are having issues with their cell mates
       and request to speak with a sergeant, they are often denied
       the right to do so and advised that the only way they will
       be permitted to change cells will be by going to lock up
       (Solitary).

58.    In July 2019 Inmate Martinez returned from the Minimum
       unit to complete his self enrichment courses. Inmate
       Martinez requested to return form the Minimum units.

59.    Plaintiff was assisting Inmate Martinez, in filing the
       grievances and proper paper work for securing his job back
       as a law library clerk.

60.    Plaintiff was informed by a second shift officer that
       officer John doe who worked in center control called and
       stated that *"inmate Martinez is a Fagot"* and that he [the
       officer] read letters the Minor exchanged with other
       inmates.

61.    Plaintiff than seen Goncharov, and was told that he
       knew that Plaintiff was gay Goncharov Doe, told "I read your
       mail, and we knew you are the one who is doing that proposal
       for the faggots".

62.    Plaintiff, laughed at the officers comments, in hopes
of deflecting the derogatory comments.

63.    In the Following weeks Plaintiff begun to work with
Inmate Martinez closely on the proposal, (See Exhibit _A_).

64.    Plaintiff was informed by John Doe that the same
officer that called the unit, had also stated that inmate
Martinez was a "faggot" and that he (I/M Martinez) was
working with Plaintiff on a proposals for gays. John Doe
officer, informed the unit officer to refrain form allowing
Plaintiff to bring supplies or anything to the other housing
units where I/M Martinez was housed at.

65.    Upon Information and belief John Doe Correctional
officer was reading  through the outgoing mail, and learned
about Plaintiff's sexual orientation.

66.    Defendant doe made calls to other unit officers about
Plaintiff and Inmate Martinez in hopes of provoking some
kind of incident.

67.    Plaintiff was informed by Inmate Martinez in the Month
of July 2019 that he was attempting to request to be moved

back to his prior unit so that he could be tutored by
another inmate who agreed to help him. Inmate Martinez
informed Plaintiff that his request was not being answered
by The education Department and asked if Plaintiff could
help him.

68.    Plaintiff begun assisting Inmate Martinez with his
request helping him organize the paper work that needed to
be submitted and helping him make the proper copies.

69.    Plaintiff, informed his Supervisor who at all times
relevant to this complaint was Mr. David Metelow supervisor
of education about Inmate Martinez SBI# 321613-G request for
a tutor and to be moved. Mr. Mettelow informed that he would
look into the issues and make the recommendation to the
custody department.

70.    After a few weeks passed Inmate Martinez SBI# 321613-G
informed Plaintiff that he had seen Mr. Mettelow in
Classification and made the classification committee aware
of his request to move housing units.

71.    The classification committee has the authority to
change an inmates program or housing assignment. NJAC: 10A-9

72.     Inmate Martinez SBI# 321613-G was told to be patient
with the process and that he would eventually be moved to
the unit where he was receiving tutoring at.

73.     Plaintiff was approached by an officer on the compound
while on his way to school and told that he should stop
helping inmate Martinez because he was a gay, the officer
informed Plaintiff that the inmate was not going to be moved
because of the Fact that Plaintiff who also identified as
Gay was housed on the same unit where Inmate Martinez SBI#
321613-G tutor was housed at.

74.     Plaintiff made it clear that the actions of Inmate
Martinez SBI# 321613-G was actions that he had been
authorized through the classification committee to take.

75.     Plaintiff informed the officer that regardless of his
sexuality he should not be targeted by officers and that
officers should not worry about what he was doing or who he
was helping.

76.     The officer that stopped Plaintiff on the compound was
Defendant Mark Goncharov who had been calling the unit and
spreading the rumor that not only was Inmate Martinez SBI#
321613-G gay, but also stating that he read things in

Plaintiff's male that gave him the impression that Plaintiff was gay.

77.    As a direct result of Defendants Goncharov actions Plaintiff begun to receive harassment from other Jane doe officers.

78.    Defendant Goncharov, actions violated the departmental policy regarding officer conduct.

79.    The following day, Plaintiff was made aware by other inmates that sergeant Dilks came to the library and begun to inform inmates about Plaintiff's sexually orientation.

80.    Sgt. Dilks came to the library and told Plaintiff along with Inmate Martinez SBI# 321613-G to keep their hands above their head, claiming that he knew faggots like to touch each other.

81.    Sgt. Dilks along with his co-conspirators begun to target Inmate Martinez SBI# 321613-G and Plaintiff because of their identification as gay.

82.    SCO John doe, informed Sgt. Dilks that both Plaintiff and Inmate Martinez SBI# 321613-G was gay and that they were attempting to ask administration to consider a process that would also help those who identified as Gay, bisexual,

transgender, intersex, or gender non-conforming to be able
to move to safer locations pursuant to Prison Rape
Elimination Act.

83.    SCO John doe, told Plaintiff that he would make first
shift aware of what him being gay, saying "Don't think that
this is going to stay a secret".

84.    Plaintiff had never revealed his sexual orientation to
anyone yet, after SCO  Mark Goncharvo made Sgt. Dilks aware
of this matter Defendant Dilks begun to target Plaintiff
because of his advocacy work with Inmate Martinez SBI#
321613-G.

85.    Inmate Martinez SBI# 321613-G begun to file grievances
with the education Department and the administration
regarding his placement in a new housing unit because of the
lack of information he was receiving form the education
Department.

86.    Plaintiff continued assisting Inmate Martinez SBI#
321613-G with the grievances that he was filing with the
education department concerning his placement and college
courses.

87.    Defendant Mark Weinstein was aware of the issue with
Inmate Martinez SBI# 321613-G and advised him that it was
education department that was denying his request to be
reassigned to another unit so that he could receiving
tutoring.

88.    After, being notified about this Inmate Martinez SBI#
321613-G begun to pursue the issue by submitting the case to
the education department in the form of a letter and a
educational request form.

89.    Plaintiff, advised Mr. Mettelow that the custody
department was advising Inmate Martinez SBI# 321613-G that
he was being denied the opportunity to move because of he
education department. Mr. Mettelow stated that it was not up
to him if someone could move.

90.    Upon information and belief Mr. Mettelow spoke with Lt.
Weinstein to reprimand him about providing Inmate Martinez
SBI# 321613-G with false information via inquiry number
_____.

91.    Upon information and belief Mr. Mettelow requested for
Defendant Weinstein to move Inmate Martinez, and Defendant
Weinstein refused to do so based upon knowing that Inmate

Martinez SBI# 321613-G was gay and working on a proposal
that would change the way custody housed those who
identified as Gay.

92.   Defendant Weinstein, also wanted Inmate Martinez to
stay off of the Kiosk system and was becoming annoyed with
the grievances from Inmate Martinez SBI# 321613-G

93.   Upon Information and belief Defendant Weinstein
communicated these things  to Mr. Mettelow, informing him
that Martinez was gay and that he did not wish to move him
because of such.

94.   On 8/26/19 Mr. Mettelow recommended that Defendant Mark
Weinstein to move Inmate Martinez SBI# 321613-G to unit 11R
so that he could receive tutoring.

95.   On 8/26/19 Defendant Weinstein retaliated against
Plaintiff for helping Inmate Martinez SBI# 321613-G and
instructed Defendant Khulen to move Plaintiff to another
unit where Inmate Martinez SBI# 321613-G was housed at This
move was referred to as the "Faggot Swap".

96.   Plaintiff was informed upon returning to his housing
unit form his Prison Job that his Boy-friend was coming to

Demetrius Minor                         Page 24                         9/18/2019

the unit and that he was going to be moved to another unit,
specifically the unit where Inmate Martinez SBI# 321613-G
had been housed at.

97.    Plaintiff requested to speak with the sergeant and was
denied and than informed the unit officer Battia that he
wished to file a Prea complaint.

98.    Plaintiff's unit officer informed him, you can not file
any of that gay shit and you are being ordered to move, do
you wish to refuse this assignment? Plaintiff responded no!

99.    Plaintiff returned to his cell with trash bags to load
his property in; Plaintiff noticed the unit sergeant coming
in and requested that he be permitted to file a PRea
complaint.

100.   The unit Sgt who at all times relevant to this
complaint was Sgt. Khulen asked him what was the subject of
his PREA complaint; Plaintiff informed the Sergeant that he
felt as through he was being targeted because of his
sexuality and that because of that he was obligated to file
a PRAE Complaint.

101.    As a direct result of Defendant Dilks, Khulen and Jane
John doe actions, plaintiff was moved to a more restrictive
unit where he has now been subjected to homophobic slurs and
harassment.

102.    As a direct result of Defendants Weinstein and Khulen,
Plaintiff has been deterred from using the jpay system, and
from filing complaints about sexual Assault.

103.    Plaintiff informed the Sergeant that he knew he was
only be moved because of the fact that Inmate Martinez SBI#
321613-was coming to the unit and that he had written
grievances.

104.    Defendant Khulen told Plaintiff that he was not being
targeted and that the reason for his move was random, and
simply because of the fact that they (custody) needed a bed.

105.    During this entire process, there were three beds open
on the unit, and there was only 1 Bed on the unit where
Plaintiff was going, the bed.

106.    Although Custody staff including Defendants Weinstein
and Dilks would like for this incident to be referred to as
a coincidence the facts is compelling and the timeline
between when Plaintiff and Inmate Martinez SBI# 321613-G

Demetrius Minor                        Page 26                        9/18/2019

started their constitutionally protected activity and the
beginning of the retaliation is close and clear.

107.    Plaintiff after being denied by the sergeant about this
PREA complaint, told the sergeant hat he had reminded him
that this is the way that PREA complaints were suppose to be
brought to him, and that he was doing the right thing.
Sergeant responded ,that we have not spoke about anything
and that we were only having a general conversation.

108.    Upon information and belief defendant Khulen was
telling Plaintiff that if he tried to say that he was denied
the opportune to file a PREA complaint he would claim that
he never heard Plaintiff.

109.    Plaintiff than went to this cell and crafted out a sign
that red :I need to file a PRea complaint"

110.    The unit officer, immediately called a "Sgt report.."
through his radio, causing the Facility one compound to be
locked down and 15-20 officers to arrive on the unit.

111.    Plaintiff who was up by his room, was ordered to get on
his knees by Defendant Knulen.

112.   Following this incident, Plaintiff was handcuffed and escorted to the holding tank where he was ordered to remain in a dry cell, which had no working accessible plumbing.

113.   After about an hour Plaintiff was interviewed by Mental health, who stated that they were following up on a PREA complaint.

114.   Plaintiff explained that he had been assisting another inmate with grievances and a proposal for the LGBT community when he begun to be the target of retaliation by Sgt. Dilks, and Jane and John Doe Correctional Officers.

115.   Plaintiff explained that after helping another inmate who identified as Gay, he was threatened and told that if he did not stop hw would face consequences.

116.   Plaintiff explained that when the inmate whom he was helping got approved for a housing re-assignment, Plaintiff became the focus of retaliation. In addition, plaintiff summarized that Sgt. khulen, Sgt. Dilks and Lt. Weinstein, conspired to play a joke on Plaintiff by removing him form his unit (11R) and moving him to another housing unit (21R).

Demetrius Minor                         Page 28                         9/18/2019

117.    Plaintiff was unable to explain all of his PREA
   complaint out of fear that he may be retaliated against for
   his statement;

118.    While Plaintiff was filing his PREA complaint with rhe
   mental health clinician, the custody Sgt Defendant Khulen
   was present the entire time.

119.    Plaintiff was eventually seen by the Prisons special
   investigation's division (SID) who gave Plaintiff more
   confidentially, Platinff, explained that custody was abusing
   their officials duties by targeting Plaintiff for his
   sexuality. Plaintiff explained that he was moved and
   targeted because of the fact that he helped Inmate Martinez
   SBI# 321613-G with his grievances which subquently led to
   him being moved to unit 11R.

120.    After spending 5 hours in the holding tank, with no
   opportunity to use the bathroom Plaintiff slightly urinated
   on his self.

121.    Plaintiff made Multiple request to the supervisor
   Defendant Khulen, and Defendant Weinstein, requesting to use
   the bathroom, asking that defendants remove the pad-locks
   from the toilet so that plaintiff could use the bath room.

28

122.    Defendants Khulen, laughed and said you will be
   alright?

123.    Plaintiff suffered pain form holding hi urine for so
   long, plaintf still suffers pain.

124.    After 5 hours Defendant Khulen, came to Plaintiff to
   advise him that he would e moved to 21R.

125.    Defendant Dilks was in the control both, picking a cell
   for Plaintiff, when he said ohh I got a idea lets kill two
   birds with one stone 1089. Muslim"

126.    Upon information and belief Defendant Dilks was aware
   that the inmate who was in 1089 was Muslim and blood, which
   could increase e the likely hood of conflict between the
   inmate and plaintiff who was identifying as gay.

127.    Following the Defendant Weinstein proceed to tell
   plaintiff that he was going to be moved to 21R. Defendant
   Weinstein, stated " SID has cleared all of this, I still win
   and your going to pay for helping that punk" your property
   is being packed up you are not permitted to go to your prior
   unit.

Demetrius Minor                      Page 30                           9/18/2019

128.   Plaintiffs property was packed  by another inmate, the
       officer failed to make sure that all of his property was
       secured and as a result, plaintiff radio was stolen along
       with 200.00 worth of commissary, these items included but
       were not limited to soaps, food and clothes.

129.   Plaintiffs Monitor to his word processor has also be
       damaged and is now in need of repairs.

130.   Plaintiff was advised by other inmates, that Sgt had
       told other inmates that Plaintiff was going to detention and
       that he was a sick homo.

131.   Unbeknownst to the inmate population Plaintiff was
       returning to the compound, yet relocating to another unit.

132.   As a result of the relocating to a new unit, plaintiff
       who is on the special needs rooster is unable to socialize
       in the same environments.

133.   As a direct result of the Defendants actions Plaintiff
       has been forced to live on constant fear and suffer
       psychological harm.

134.    South Woods State Prison is divided into 3 different
compounds, which can run indepently and separate form each
other, as one other states largest prisons , the three
facilities are able to hold inmates in them and segregate
them preventing a inmate who is in one facility from seeing
other inmates.

135.    On each facility these is 2 housing buildings, each
holding 124 inmates, each housing unit has separate yards
and segregates their programs. hence if a inmates is moved
from house 1 to house 2 he will not be in the same social
environment.

136.    For those who are on the special needs rooster such as
Plaintiff was, an social environment can contribute to their
treatment plan or become counter productive to the inmates'
rehabilitation.

137.    Plaintiff has been engaged in treatment of mental
health issues such as but not limited to Sexual Abuse and
symptoms of Post Traumatic Stress Disorder for almost 2
years, Plaintiff was not experiences any panic attacks.

Demetrius Minor                               Page 32                              9/18/2019

138.   Since being moved to this new unit Plaintiff, has not
       been able to sleep, has had headaches and panic attacks in
       the Yard.

139.   Plaintf has been shouted at by the unit officers, while
       doing laps in the yard, plainff has had to endure the
       homophobic slurs form other inmates.

140.   Plaintiff, is living in a constant fear because of the
       false rumors that were spread by the custody officials.

141.   Defendant Weinstein, Dilks and Khulen targeted Inmate
       Martinez SBI# 321613-G and Plaintiff based on their
       constitutionally protected activity.

142.   Defendant Weinstein, Dilks and Khulen Did not think
       that plaintiff would announce his identifation of being gay.
       Which was why they believe that they would get away with
       this.

143.   Defendant Weinstein, was the supervisors for Defendant
       Dilks and Sgt. Khulen, Defendant Weinstein had a duty to
       ensure that inmates were being treated fairly and not being
       retailed against for filing grievances.

144.   Plaintiff had a protected liberty interest to be free from retaliation for filing grievances.

145.   Plaintiff's State created liberty interest to be protected from retaliation is within NJAC: 10A:1-4.4(b)

> i.  *(b) The submission of an Inmate Inquiry Form," Inmate Grievance Form," and/or Administrative Appeal shall not result in cause for coercion, punishment, retaliation, reprisal, or retribution against any individual.*

146.   Such Rogue and unlawful Pattern practice of misconduct here at South Woods State Prison is flaunted with impunity and immunity is not only unlawful, unethical, and said actions are outside of the color of the law and strikes directly at the core of the U.S. Constitution, 1st Amendment, but it is also conduct that is unbecoming of a Corrections Officer and egregious conduct that out right betrays the public trust as public servants and strains the integrity and moral of the profession here at SWSP and Department of Corrections as a whole.

147.   Plaintiff respectfully request the defendants to cease and desist any further retaliation, I.e. retaliatory transfer, harassing and retaliatory searches of my persons or property, unlawful seizure or destruction of my property, unprovoked assault or physical abuse, and further falsified

disciplinary charges lodged against me, arbitrary and

capricious removal of my institutional law library job,

indifferent treatment, arbitrary capricious denied of any

rights and or privileges where legitimate penoligalc

interest is lacking.

148.    These wrongful acts and omissions by the above named

defendants constitute violation of plaintiff's rights under

the New Jrsey Constitution.

149.    Plaintiff has suffered injuries as a result of these

acts and omissions for which the above named defendants are

liable in their individuals capacities in an amount to be

proved at trail.

150.    The injuries suffered by Plaintiff as a result of these

acts and omissions are of a continuing nature, and for which

there is no adequate remedy of law.

151.    The plaintiff has consistently filed grievances

concerning the wrongdoing described above and, as to each

every material allegation herein, the plaintiff has

exhausted all availed administrative remedies. the

grievances and appeals, however, have routinely been denied

without reasonable consideration or investigation. IN

numerous instances the grievances officer, and their
superiors upon appeal have gained to make even minimal
efforts to investigate the plaintiff complaints, instead
simply saying his grievances without any investigation
whatsoever and or accepting without questions the testimony
of the correctional officer and other DOC employees. As
operated, the grievance system is fundamentally unfair,
operating to rubber stamp the actions taken by correctional
and statutory rights of prisoners.


152.   Failure to implement policies

153.   Defendant john Does, had the authority to move inmates
who identified as Gay when safety concerns arose.

154.   Defendant john Doe, failed to implement policy(s) that
comported with the PREA standards.]

155.   Defendant John Doe, were in violation of the PREA
standard, for failing to ensure that all inmates that came
through the facility were poperally accessed for their
vulnerability as Gay inmates.

156.    While PREA does not permit inmates to have a private right to sue the violations that occurred with Defendants John Doe, Dilks and Weinstein, taken as a totality has violated the Plaintiff eighth amendment right to free from cruel and unusual punishment.

157.    On August 10, 2019, Plaintiff was interviewed by the Special Investigations Division multiple letters and jpay massages were the focus of the investigation (See attachments_____)

### FIRST AMENDMENT VIOLATION

158.    Plaintiff was also questioned about his Website Justice4Demetrius.org.

159.    Plaintiff, currently has a website that was purchased by his Brother Claude Minor and is owned by his Brother.

160.    Www.Justice4Demetrius.org was designed so that plaintiff could shine light on his case and look for possible attorneys that would be able to help him.

161.    Justice4Demetrius.org does not advertise anything, nor does it solicit funds that are provided to Plaintiff.

162.    Justice4Demetrius.org was design to shine light on the plights that youth face while in the system. Plaintiff, sends his writings to the streets where after they are edited and reviewed they are posted to the website by his advocates or assistant.

163.    Plaintiff was advised by the investigator that he may be requested to step away from the website.

164.    Upon information and belief Plaintiff is being requested to take his website down or "step away" form it because of his filing of these recent complaints and grievances the letters that he has sent.

165.    Plaintiff's involvement shall be considered constitutionally protected activity.

166.    Had it not been for Plaintiff's engaging in constitutionally protected activity, he may have never been requested to step away form his site.

Demetrius Minor                           Page 38                              9/18/2019

167.   The New Jersey Department of Corrections has no rule
       that prohibits inmates from having a website that are
       designed to advocate for them and does not solicit business.

168.   Plaintiff's website does not solicit business, the site
       did have a donation button that was designated to the site
       and design so that the site could function independently.

1. WHEREFORE, PLAINTIFF  demands judgment against each of the Defendants, in their
   individual and official capacities, as may be appropriate, jointly, severally and in the
   alternative, or such of them as may be determined to be liable under the premises,
   including, but not limited to, punitive damages;

2. PLAINTIFF to recover from Defendants that cost of this action, including reasonable
   counsel fees, if any, and,

3. PLAINTIFF to have such other relief and further relief as may be proper.

4. EXECUTED on this. September 10, 2019

Demetrius Minor

## **DEMAND FOR JURY TRIAL**

PLAINTIFF hereby demands trial by jury on all issues so triable herein.

EXECUTED on this ~~November 29~~ September 10, day of 2019.

Demetrius Minor

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated and that no other party should be joined in this action accept for additional Defendants as may be discovered in the future.

EXECUTED on this September 10, 2019.

Demetrius Minor

## DECLARATION

Plaintiff , pursuant to Title 28 U.S.C. Section 1746, declares under penalty of perjury that the following is true and correct:

That he is the Plaintiff for this litigation; that he has read the above mentioned Complaint and knows the contents by official government documents, official sources, first hand experiences, and, based upon information and belief, the allegations contained in this Complaint, as they relate to those issues within his knowledge are true.

EXECUTED on this September 10, 2019.

Demetrius Minor