NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| DEMETRIUS MINOR, | : | **CIV. NO. 19-18261 (RMB)** |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| SERGEANT DAVID DILKS, *et al.*, | : | |
| | : | |
| Defendants | : | |

**BUMB, United States District Judge**

This matter comes before the Court upon Plaintiff Demetrius Minor's civil rights complaint under 42 U.S.C. § 1983, the New Jersey Civil Rights Act ("NJCRA") N.J.S.A. § 10:6-2, and tort claim for intentional infliction of emotional distress under New Jersey law. (Compl., ECF No. 1.) Plaintiff is a prisoner in South Woods State Prison ("SWSP"). (Id.) Also before the Court is Plaintiff's Emergency Motion for a Temporary Restraining Order ("TRO") (Mot. for TRO, ECF No. 2) and his application to proceed *in forma pauperis* under 28 U.S.C. § 1915 (IFP App., ECF No. 1-1.) Plaintiff's IFP application establishes his financial eligibility to proceed without prepayment of the $400.00 filing fee and will be granted.[1]

---

[1] Plaintiff has at times in the past six months had more than $400 in his trust account. However, when he submitted his trust account with his complaint in September 2019, the ending balance was $0. (IFP App., ECF No. 1-1 at 13.)

When a prisoner is permitted to proceed without prepayment of the filing fee or when the prisoner pays the filing fee for a civil action and seeks redress from a governmental entity, officer or employee of a governmental entity, 28 U.S.C. § 1915(e)(2)(B), § 1915A(b) and 42 U.S.C. § 1997e(c) require courts to review the complaint and *sua sponte* dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. In reviewing the complaint, the Court will address any new facts alleged in the motion for a TRO as a supplement to the complaint. For the reasons discussed below, the complaint may proceed in part and the emergency motion for a temporary restraining order is denied without prejudice. The Court will *sua sponte* appoint counsel to Plaintiff under 28 U.S.C. § 1915(g).

I.   *Sua Sponte* Dismissal

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and

what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the

amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II. DISCUSSION

    A.    Allegations in the Complaint and Motion for a TRO[2]

    Plaintiff alleges defendant correction officers and administrators at SWSP and the New Jersey Department of Corrections; (1) retaliated against him for filing grievances in violation of the First Amendment and (2) refused to comply with PREA[3] regulations, which put him, as a gay, bisexual, transgender inmate, at risk of assault by other inmates in violation of the Eighth Amendment prohibition against cruel and unusual punishment. Plaintiff also alleges violations of the New Jersey Civil Rights Act ("NJCRA")[4] and intentional infliction of emotional distress under New Jersey law.

---

[2] Unless otherwise noted, the factual allegations are cited from Plaintiff's complaint, ECF No. 1.

[3] Congress passed the Prison Rape Elimination Act in 2003 in response to the high incidence of prison rape. 42 U.S.C. § 15601(13), (14), transferred to 34 U.S.C. § 30301.

[4] The New Jersey Legislature intended for the NJCRA to parallel 42 U.S.C. § 1983, and incorporate existing § 1983 jurisprudence. Perez v. Zagami, 218 N.J. 202, 515 (2014). "Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983." Chapman v. N.J., No. CIV. 08-4130(AET), 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) (citing cases). The Court will, therefore, address the claims together.

Plaintiff alleges the following facts in his complaint and emergency motion for a TRO, taken as true for purposes of screening the complaint pursuant to 28 U.S.C. §§ 1915(a); 1915A and 42 U.S.C. § 1997e(c). Plaintiff is a transgender, gay inmate at SWSP who seeks a TRO or preliminary injunction ordering John Powell, Administrator at SWSP, and others to provide Plaintiff with safe housing with another transgender inmate or a non-heterosexual inmate, in compliance with the Prison Rape Elimination Act ("PREA") mandate in 28 C.F.R. § 115.242(d)[5] to take into consideration a prisoner's views of his own safety. (Mot. for TRO, ECF No. 2.)

Plaintiff describes the prison's housing policy. When gay or gender-nonconforming inmates enter the prison facility, no consideration is given to their risk for sexual assault and harassment, and they are housed with anyone. (Mot. for TRO, ECF No. 2 at 4-5.) When inmates enter Central Reception and Assignment

---

Chapman v. N.J., No. CIV. 08-4130(AET), 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009)

[5] 28 U.S.C. § 115.242 (a), (d) provides:

(a) The agency shall use information from the risk screening required by § 115.241 to inform housing, bed, work, education, and program assignments with the goal of keeping separate those residents at high risk of being sexually victimized from those at high risk of being sexually abusive.

. . .

(d) A transgender or intersex resident's own views with respect to his or her own safety shall be given serious consideration.

Facilities ("CRAF") before they are assigned to a prison, they are asked questions designed to determine if they should be classified as "Victims" or "Perpetrators." (Id.) The "Perpetrator" classifications do not take into account inmates who have committed acts of sexual assault or violence within a prison. (Id. at 5.)

Additionally, after a change of staff in Plaintiff's housing unit in SWSP, Sergeant Mark Weinstein controlled decisions regarding inmates' requests for cell or unit transfers. The lieutenant in charge prior to Weinstein had permitted inmates who identified as gay to request transfers if they feared for their safety. Sergeant Weinstein's practice was to not permit requests for cell changes, and the only way to obtain a cell change if a prisoner feared for his safety was to refuse to enter his cell, which would result in the inmate's placement in solitary confinement. Weinstein admitted to another inmate that he did not permit cell changes.

In 2019, Plaintiff was assigned to work in the prison law library and was permitted by prison regulations to assist other inmates with their legal work. Plaintiff assisted inmates who identified as gay or nongender-conforming with their various grievances. In this capacity, along with Inmate Martinez, Plaintiff drafted proposals for new policies at SWSP that would be PREA compliant.

Weinstein was aware of Plaintiff's and Martinez's proposal to the administration, which was contrary to his practice. Plaintiff filed grievances about Weinstein and his staff's refusals to consider the cell or unit change requests of inmates who were harassed or felt unsafe. Plaintiff exhausted his grievances.

Plaintiff alleges that SWSP does not comply with certain PREA regulations. First, a PREA regulation requires prisons to screen inmates upon intake, including those who are perceived to be gay, bisexual, transgender or gender non-conforming, for risk of victimization. See 28 C.F.R. § 115.41. Plaintiff discovered that SWSP was failing to comply with this regulation. Additionally, because custody staff does not permit such inmates to be considered for cell and unit transfers when they are harassed or fear for their safety, the only way for the inmates to feel safe is going to solitary confinement.[6]

Second, 28 C.F.R. § 115.242(d),[7] requires prison officials to take into consideration a prisoner's views of his own safety. (Mot. for TRO, ECF No. 2.) Plaintiff alleges SWSP violates this

---

[6] Plaintiff makes allegations about violations of other inmates' rights. The Court will not address claims made on behalf of other inmates because Plaintiff does not have standing to bring such claims. See Warth v. Seldin, 422 U.S. 490, 499 (1975) (a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

[7] See *supra* n. 5.

regulation by not permitting inmates to request cell changes by custody staff when they feel unsafe.

Prior to June or July 2019, Plaintiff had not revealed to corrections officers that he was gay or transgender. When Inmate Martinez, whom Plaintiff worked with on PREA policy proposals, was transferred to a lower security prison, they continued to correspond. Inmate Martinez sought and obtained a transfer back to SWSP because he was pursuing paralegal certification and SWSP had a superior law library and education department.

Upon Inmate Martinez's return to SWSP, he continued to work with Plaintiff on PREA policy proposals. Plaintiff assisted Martinez with his grievances and his pursuit of a unit transfer, which was necessary to pursue his education goals. Defendant Mark Goncharov ("Goncharov"), a corrections officer, told Plaintiff that he had read his mail and knew Plaintiff was "the one who is doing that proposal for the faggots." Goncharov disclosed Plaintiff's sexual orientation to other unit officers in hopes of provoking an incident. As a direct result, Plaintiff was harassed by other officers.

Plaintiff also learned that Sergeant David Dilks, named as a defendant, had gone to the law library and informed inmates of Plaintiff's sexual orientation. When in the library, Dilks told Plaintiff and Martinez to keep their hands above their heads

because he knew "faggots like to touch each other." Dilks was targeting Plaintiff due to his advocacy work with Martinez.

On August 26, 2019, Mr. Mettelow, the supervisor of education at SWSP, asked Weinstein to transfer Martinez to Unit 11R, Plaintiff's unit, for tutoring. Plaintiff alleges Weinstein then moved Plaintiff to the unit where Martinez had been housed, referring to the move as the "faggot swap," in retaliation for Plaintiff filing grievances and assisting gay and transgender inmates with their grievances.

When Plaintiff learned he would be moved, he requested to speak to a sergeant but the request was denied. Unit Officer Battia informed Plaintiff that he could not file a PREA complaint. While packing his cell, Plaintiff asked Sergeant John Khulen ("Khulen"), named as a defendant, if he could file a PREA complaint because he felt targeted based on his sexuality. Khulen told Plaintiff he was not being targeted; his move was random because they needed a bed. However, there were three beds open on the unit and only one bed open where Plaintiff was transferred.

In his cell, Plaintiff made a sign that read "I need to file a PREA Complaint." The unit officer called a "Sgt report," causing Facility One to lock down and 15-20 officers responded to the unit. Sergeant Khulen ordered Plaintiff to get on his knees. Plaintiff was handcuffed and taken to dry cell with no accessible plumbing.

An hour later, mental health staff interviewed Plaintiff in the dry cell, in follow up to his PREA complaint. Sergeant Khulen was present for the entire interview. Plaintiff explained that he was threatened with consequences if he did not stop helping an inmate who identified as gay. When Plaintiff helped Martinez with his housing reassignment, he became the focus of retaliation by Sergeant Khulen, Sergeant Dilks and Lieutenant Weinstein, who "played a joke on him by moving him to Housing Unit 21R." Over the course of five hours in the dry cell, Khulen and Weinstein denied Plaintiff's multiple requests to remove the padlock from the toilet, despite his dire need to use a bathroom. Plaintiff was informed that he would be moved to Unit 21.

In choosing a cell for Plaintiff, Sergeant Dilks said "let's kill two birds with one stone 1089, Muslim." Plaintiff alleges Dilks knew the inmate in Cell 1089 was a Muslim and a Blood, which would increase the likelihood of conflict with Plaintiff, who identified as gay. Weinstein told Plaintiff "SID has cleared all of this. I still win and you['re] going to pay for helping that punk." Another inmate packed Plaintiff's property, and Plaintiff's radio and commissary items were stolen and his word processor was damaged.

Plaintiff is on a special needs roster for mental health issues. He was in treatment for Post-Traumatic Stress Disorder caused by prior sexual abuse. In his new unit, he lived in constant

fear. He developed insomnia, panic attacks and headaches. Unit Officers shouted at Plaintiff and other inmates made homophobic slurs. In an interview with the prison's Special Investigation Division ("SID") on August 10, 2019, Plaintiff explained that he was moved because he helped Inmate Martinez with his grievances and his unit transfer.

During the SID investigation, Plaintiff was questioned about his website, Justice4Demetrius.org, which is owned by his brother.[8] The website was designed to "shine light on the plights that youth face in the system." Plaintiff was advised by an investigator that he may be requested to "step away" from the website.[9] Plaintiff alleges this was retaliation for filing grievances. The NJDOC has no rule prohibiting inmates from having a website that does not solicit business. Plaintiff's website had a donation button but did not solicit funds that were provided to Plaintiff.

In his subsequently filed motion for a TRO, Plaintiff acknowledges that in September 2019, presumably after he filed the present complaint on September 23, 2019, he was permitted by SID to be housed with a transgender inmate of Plaintiff's choosing. (Mot. for TRO, ECF No. 2 at 4.) However, Plaintiff's transgender

---

[8] Plaintiff does not address his website in his motion for a TRO.

[9] Plaintiff does not allege that he ultimately was asked to take down or end his participation in his website. Therefore, the Court will not address Plaintiff's retaliation claim regarding his website.

cellmate was sent to isolation and Plaintiff was "again housed by custody staff with another inmate who had violent propensities and was known for fighting with other inmates, it is also known that the inmate is a member of the Bloods Street gang." (Mot. for TRO, ECF No. 2 at 7.)

Plaintiff complains that the practice at SWSP denies inmates the right to ask a sergeant for a cell change for safety reasons, and the only option is to go to solitary confinement. (Id. at 7-8.) Plaintiff also notes, however, that "the Administration" told him there is a policy in place to request cell changes through the kiosk, in a section under "custody" for "cell change." (Id. at 8.) Plaintiff asserts this policy is futile because he has attempted this and was provided with unsatisfactory results. (Id.) Custody staff continue to claim they do not make cell moves at the request of an inmate. (Id. at 8-9.)

Plaintiff's mental health provider told him that "custody" refuses to listen to "mental health" about cell moves. (Id. at 12.) He also alleges that "custody" has an unwritten rule that inmates who are on the special needs roster cannot be housed alone, resulting in their immediate placement with another inmate if their cellmates are moved. (Id.) Plaintiff fears this policy precludes proper housing assessments for inmates who are gay and/or transgender. (Id. at 12-13.)

Plaintiff argues that he will be subjected to irreparable harm if a TRO does not issue because he is in constant fear that he will be attacked by his cellmate. (<u>Mot</u>. for TRO, ECF No. 2 at 8-9.) Within the last few weeks, an inmate in Plaintiff's housing unit was beaten to death by his cellmate. (<u>Id.</u> at 9.) As a consequence, Plaintiff has suffered panic attacks and break-downs "exacerbated by the fact that he is being forced to be housed with a gang member who is constantly questioning him about his involvement in the LGBT community." (<u>Id.</u> at 5.)

Plaintiff recognizes that PREA does not create of private right of action, but he contends the conduct of John Doe correction officers, Dilks and Weinstein violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff also named John Powell, Administrator of SWSP, as a defendant who is responsible for policy-making and policy enforcement. Plaintiff named as defendants John and Jane Does 1-30, employees of the prison or the NJDOC who were responsible for policy-making and the care or supervision of inmates at SWSP.

B.   <u>Claims Under 42 U.S.C. § 1983</u>

A plaintiff may assert a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides, in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory ... subjects, or causes

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and that the constitutional deprivation was caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

### 1. Eighth Amendment Failure to Protect

Plaintiff recognizes that PREA does not create a private right of action. See Walsh v. N.J. Dep't of Corr., No. 17-2442(JBS-AMD), 2017 WL 3835666, at *3-4 (D.N.J. Aug. 31, 2017) (discussing PREA). Therefore, he brings his claims under the Eighth Amendment prohibition of cruel and unusual punishment. He alleges the actions of the John Does, Dilks and Weinstein, in their totality, constituted cruel and unusual punishment.

Prison conditions are subject to scrutiny under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment imposes duties on prison officials to provide adequate, food, clothing, shelter, medical care and to "take reasonable measures to guarantee the safety of inmates." Id. (quoting Hudson

v. Palmer, 468 U.S. 517, 526–527 (1984)). This includes a duty to "protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (quoting Cortes–Quinones v. Jimenez–Nettleship, 842 F.2d 556, 558 (1st Cir.)) (internal quotation marks and citation omitted), cert. denied, 488 U.S. 823 (1988). For claims based on failure to prevent harm, inmates must show they are incarcerated under conditions posing a substantial risk of harm. Id. at 834. Inmates must also show that the defendants were deliberately indifferent to inmate health and safety. Id.

Deliberate indifference can be shown where the defendant knows of and disregards facts from which an inference can be drawn that a substantial risk of serious harm exists, and the defendant draws that inference but fails to act. Id. at 837-38. A trier of fact may "infer knowledge from the obvious." Id. at 844. A prisoner may seek injunctive relief "to prevent a substantial risk of serious injury from ripening into actual harm." Id. at 845. Plaintiffs may use evidence of prison officials' current attitudes and conduct to establish the continuance of a knowing and unreasonable disregard of an objectively intolerable risk. Id. at 846.

Plaintiff alleges SWSP is rife with sexual harassment and at times assaults against gay and nongender-conforming inmates. He alleges that the combination of not having an intake policy that identifies gay and nongender-conforming inmates for potential

victimization or a policy that identifies prisoners who have committed acts of violence or sexual abuse while in prison, combined with a policy of not permitting gay or nongender-conforming inmates to request cell changes from custody staff when they feel unsafe, places him at substantial risk of serious harm. Additionally, Plaintiff alleges he has twice been placed in cells with violent gang members and his only option is to refuse to "lock-in" and then be placed in solitary confinement. Taking his allegations as true, as the Court must at the pleading stage, Plaintiff's Eighth Amendment claims may proceed against Defendant Weinstein (in his individual capacity) whose alleged practice was not to permit requests for cell changes.

### 2. Supervisory liability, failure to implement policies

Plaintiff's allegations against John Powell, the administrator of the prison, are wholly conclusory. (Compl., ¶6.) To state a claim of supervisory liability against Powell, Plaintiff must allege facts indicating Powell had knowledge of and acquiesced in his subordinate's constitutional violations, or that he was responsible for a policy or practice that directly led to violation of Plaintiff's constitutional rights. Santiago v. Warminster, 629 F.3d 121, 129 n. 5 (3d Cir. 2010) (describing the two theories of supervisory liability under § 1983.)

Plaintiff alleges that John and Jane Doe defendants had authority to move inmates who identified as gay when safety concerns arose, but failed to implement policies that comported with PREA. He further alleges that the John Doe defendants violated PREA by failing to ensure inmates entering the facility were assessed for their vulnerability and for failing to identify prisoners who have committed violent or sexually abusive acts while in prison as inappropriate cellmates for gay and nongender-conforming inmates.

Plaintiff does not specifically allege that Administrator John Powell had authority to implement such policies. Thus, Plaintiff's Eighth Amendment claims may proceed against the John/Jane Doe policy-maker defendants, and the claims against John Powell are dismissed without prejudice. Plaintiff may amend his complaint if he discovers facts showing Powell is the policymaker responsible for policies that place Plaintiff at a substantial risk of serious harm to his safety.

To establish the need for a preliminary injunction or temporary restraining order pursuant to Federal Rule of Civil Procedure 65,[10] a party must satisfy a four-part test:

> (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will

---

[10] A TRO issued with notice and hearing may be treated as a preliminary injunction. See NutraSweet Co. v. Vit-Mar Enters., Inc., 112 F.3d 689, 693 (3d Cir. 1997).

> not result in even greater harm to the
> nonmoving party; and (4) the public interest
> favors such relief. <u>Child Evangelism
> Fellowship of N.J. Inc. v. Stafford Twp. Sch.
> Dist.</u>, 386 F.3d 514, 524 (3d Cir. 2004).

<u>Miller v. Mitchell</u>, 598 F.3d 139, 147 (3d Cir. 2010).

"Injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" <u>Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.</u>, 42 F.3d 1421, 1426-27 (3d Cir. 1994) (internal quotation marks omitted)). "The primary purpose of a 'preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" <u>Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981).</u>

The Prison Litigation Reform Act ("PLRA") mandates that four additional criteria be met for injunctive relief:

> (1) the relief must be narrowly drawn; (2) the
> relief must extend no further than necessary
> to correct the violation of the federal right;
> (3) the relief must be the least intrusive
> means necessary to correct the violation of
> the federal right; and (4) substantial weight
> must be given to any adverse impact on public
> safety or the operation of the criminal
> justice system that might be caused by the
> relief.

<u>Planker v. Ricci</u>, No. 07-2679, 2010 WL 4447281, at *2 (D.N.J. Nov. 1, 2010) (citing 18 U.S.C. 3626(c)(2)).

"[T]he primary purpose of preliminary injunctive relief is 'maintenance of the status quo until a decision on the merits of

a case is rendered.'" <u>Yates Real Estate, Inc. v. Plainfield Zoning</u> <u>Bd. of Adjustment</u>, 404 F. Supp. 3d 889, 912 (D.N.J. 2019) (quoting <u>Acierno v. New Castle Cty.</u>, 40 F.3d 645, 647 (3d Cir. 1994)). "'A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.'" <u>Id.</u> (quoting <u>Acierno</u>, 40 F.3d at 653)).

Plaintiff is seeking to alter the status quo by injunction, transferring him to a cell where he will feel safer and changing prison policies regarding housing. Plaintiff does not allege that his current cellmate has made any threats against him. Although Plaintiff alleges his cellmate is known to fight with other inmates, these allegations are too vague to justify the extraordinary relief Plaintiff requests. Plaintiff also alleges the deterioration of his mental health due to his fears. However, Plaintiff is receiving mental health treatment, and his mental health providers can provide additional treatment if necessary.

Plaintiff acknowledges that he has the option of solitary confinement rather than remain with his current cellmate. The Court is not deciding that solitary confinement should be the only option for inmates who feel unsafe with their cellmates, but only that there is an alternative to immediate injunctive relief if the threat becomes serious enough. If new facts arise that warrant relief, Plaintiff may bring a new motion for injunctive relief. Further, the Court feels that appointment of pro bono counsel is

warranted and will appoint counsel to Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). See Tabron v. Grace, 6 F.3d 147, 155-56 (3d Cir. 1993) (district court may *sua sponte* appoint pro bono counsel where claims have potential merit in fact and law, factual investigation will be required, and the case is likely to turn on credibility determinations).

### 3. First Amendment Retaliation

To state a First Amendment claim of retaliation for engaging in protected conduct, a plaintiff must allege facts showing that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citing Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001)). Filing a prison grievance is constitutionally protected activity. Id. at 422 (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)).

An adverse action is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Id. at 422 n. 6 (citing Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (internal quotation marks omitted)). An adverse action "need not be great" but must be "more than *de minimus*." Id. at 423 (quoting McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations omitted)).

To show that constitutionally protected conduct was a substantial or motivating factor in the alleged retaliatory act, a plaintiff may rely on circumstantial evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link. Watson, 834 F.3d at 422 (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)). A causal link between the timing of the protected activity and the retaliatory action must be "unusually suggestive" of a retaliatory motive. Id. at 424 (Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (internal quotation marks omitted) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)). When the timing is not unduly suggestive, a plaintiff may establish retaliatory motive with timing plus "evidence gleaned from the record as a whole." Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000)).

Plaintiff established the first element of a retaliation claim by alleging he was engaged in the protected activity of filing prison grievances, making a PREA complaint, and that he assisted other inmates with grievances as part of his job duties in the prison law library, in accordance with prison regulations. See Watson, 34 F.3d at 422 (filing prison grievance is constitutionally protected activity); see Wisniewski v. Fisher,

857 F.3d 152, 156–57 (3d Cir. 2017) (assisting inmates with grievances and legal documents, as part of an inmate's job duties and in accordance with prison regulations, falls under First Amendment protection, subject to restrictions based on legitimate penological interests). If a plaintiff establishes a prima facie case, "prison officials may still prevail if they establish that 'they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" Watson, 834 F.3d at 422 (quoting Rauser, 241 F.3d at 334.)

Plaintiff alleges Dilks and Goncharov engaged in adverse actions by informing other inmates of Plaintiff's sexual orientation. Additionally, Dilks chose a cellmate for Plaintiff who was a member of the Bloods gang, knowing there could be conflict between them. These actions were sufficiently adverse because disclosing Plaintiff's sexual orientation in an environment alleged to be rife with sexual harassment and abuse, and choosing a cellmate for the purpose of causing conflict are sufficiently adverse to deter a person of ordinary firmness from exercising constitutional rights. The Court notes prison officials may still prevail by establishing they would have made the same decision for legitimate penological reasons.

Plaintiff also alleges Weinsten took an adverse action by initiating Plaintiff's transfer to another unit, in retaliation

for Plaintiff assisting Martinez with his grievances. Transfer to another unit in the prison is not sufficient to deter a person of ordinary firmness from engaging in constitutionally protected activity. Cf. Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012) (confinement in SHU with reduced access to phones, the commissary, recreation, rehabilitative programs and confinement to cell for all but five hours per week could deter a person of ordinary firmness from exercising his First Amendment rights.) This claim against Weinstein will be dismissed without prejudice.

Plaintiff also brings a retaliation claim against Khulen and Weinstein based on their reactions to his PREA complaint when he was transferred to another unit. Plaintiff alleges that when he made a sign asking to file a PREA complaint, Khulen handcuffed Plaintiff, took him to a dry cell and refused Plaintiff's requests to take the padlock off the toilet over the course of five hours. Plaintiff was placed in the dry cell to make his PREA complaint. Weinstein also denied Plaintiff's requests to use a bathroom and told Plaintiff he would "pay for helping that punk." Plaintiff alleges he made multiple requests for the bathroom, he was in pain from being forced to wait, and he "slightly" urinated on himself. Therefore, the actions by Weinstein and Khulen were sufficient to deter an ordinary person from engaging in constitutionally protected conduct.

The final element of Plaintiff's retaliation claims is a
causal link between his constitutionally protected conduct and the
adverse actions alleged. Plaintiff alleged that he regularly
assisted other inmates with filing grievances as part of his job
duties in the law library. Plaintiff alleges Dilks, Weinstein and
Goncharov knew of Plaintiff's involvement in seeking policy
changes that would permit inmates greater rights in seeking unit
and cell changes and that they were verbally abusive to Plaintiff
as a result.

When Plaintiff was seen as "winning" by helping Inmate
Martinez obtain a unit transfer, Plaintiff alleges Weinstein
initiated Plaintiff's transfer and Dilks knowingly chose a
cellmate who he thought would be hostile to Plaintiff. In direct
response to Plaintiff's PREA complaint about his transfer, he
alleges Kuhlen and Weinstein refused his requests to use a bathroom
over the course of five hours. The timing of the alleged adverse
actions together with the overall allegations in the complaint are
sufficient to allege a causal link at the pleading stage.
Plaintiff's First Amendment retaliation claims may proceed against
Goncharov, Dilks, Weinstein and Kuhlen.

C.  Intentional Infliction of Emotional Distress

The Court will exercise supplemental jurisdiction over
Plaintiff's state law claim of intentional infliction of emotional
distress. This claim may proceed against Defendants Koncharov and

Dilks based on Plaintiff's allegations they told inmates and prison employees of Plaintiff's sexual orientation for the purpose of causing his harassment in a hostile environment.

IV.  CONCLUSION

For the reasons discussed above, Plaintiff's IFP application is granted and his complaint may proceed in part. The § 1983 and NJCRA claims against John Powell are dismissed without prejudice. Plaintiff's First Amendment retaliation claim against Weinstein for transferring Plaintiff to a different unit is dismissed without prejudice. Plaintiff's motion for a TRO or preliminary injunction is denied. The Court will appoint Plaintiff pro bono counsel. An appropriate Order follows.


Date: January 13, 2020                    s/Renée Marie Bumb
                                          **RENÉE MARIE BUMB**
                                          **United States District Judge**