## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEMETRIUS MINOR,<br><br>Plaintiff,<br><br>v.<br><br>SGT. DAVID DILKS, C.O. MARK GONCHAROV, SGT. JOHN KHULEN, LT. MARK WEINSTEIN and JOHN and JANE DOES 1-10,<br><br>Defendants. | Case No. 1:19-cv-18261-RMB-AMD<br><br><br>**AMENDED COMPLAINT AND JURY DEMAND** |
| DEMETRIUS MINOR,<br><br>Plaintiff,<br><br>v.<br><br>JOHN POWELL, in his official capacity as Administrator of South Woods State Prison; JIM HASS, in his official capacity as Policy Director; ALEXANDER SOLANIK, in his official capacity as Associate Administrator; MICHAEL BROWN, in his official capacity as Facility 3 Librarian; MARCUS HICKS, in his official capacity; JANE & JON DOES; NEW JERSEY DEPARTMENT OF CORRECTIONS; JIM HASS; JENNIFER MALINOWSKI; MARCUS HICKS; JOHN POWELL; AL SOLANIK; LUIZ TORRES; LIBRARIAN BROWN; SPENELI OFC; JANAYA YOUNG; HARRY MATISH,<br><br>Defendants. | Case No. 1:20-cv-08601-RMB-AMD |

## THE PARTIES

1.     Plaintiff, Demetrius Minor ("Plaintiff"), is a prisoner currently confined at the

Edna Mahan Correctional Facility for Women, located at 30 Route 513, Clinton, NJ 08809

7728923                                      1

("Edna Mahan"), under SBI# 494475E.  Plaintiff is currently serving a sentence of thirty years for manslaughter.

2.      Prior to August 28, 2020, Plaintiff was imprisoned at South Woods State Prison, located at 215 S. Burlington Road, Bridgeton, NJ 08302 ("South Woods").

3.      Defendant, Sgt. David Dilks ("Dilks"), is an individual who at all times relevant hereto was employed by New Jersey Department of Corrections as a corrections officer at South Woods, with an address for service of South Woods State Prison, 215 S. Burlington Road, Bridgeton, NJ 08302, and who was responsible for the care, supervision and humane treatment of prisoners confined at South Woods and had an ethical and legal responsibility to pursue his duties diligently with an even hand and to abstain from any conduct which constituted a crime, fraud, malice, abuse of process, abuse of power, physical abuse, obstruction of justice and/or willful misconduct and had direct personal involvement in the wrongs enumerated in this Complaint.  Dilks is a state actor acting under color of state law.

4.      Defendant, Mark Goncharov ("Goncharov"), is an individual who at all times relevant hereto was employed by New Jersey Department of Corrections as a corrections officer at South Woods, with an address for service of South Woods State Prison, 215 S. Burlington Road, Bridgeton, NJ 08302, and who was responsible for the care, supervision and humane treatment of prisoners confined at South Woods and had an ethical and legal responsibility to pursue his duties diligently with an even hand and to abstain from any conduct which constituted a crime, fraud, malice, abuse of process, abuse of power, physical abuse, obstruction of justice and/or willful misconduct and had direct personal involvement

in the wrongs enumerated in this Complaint. Goncharov is a state actor acting under color of state law.

5. Defendant, Sgt. John Khulen ("Khulen"), is an individual who at all times relevant hereto was employed by the New Jersey Department of Corrections as a corrections officer at South Woods, with an address for service of South Woods State Prison, 215 S. Burlington Road, Bridgeton, NJ 08302, and who was responsible for the care, supervision and humane treatment of prisoners confined at South Woods and had an ethical and legal responsibility to pursue his duties diligently with an even hand and to abstain from any conduct which constituted a crime, fraud, malice, abuse of process, abuse of power, physical abuse, obstruction of justice and/or willful misconduct and had direct personal involvement in the wrongs enumerated in this Complaint. Khulen is a state actor acting under color of state law.

6. Defendant, Lt. Mark Weinstein ("Weinstein"), is an individual who at all times relevant hereto was employed by New Jersey Department of Corrections as a corrections officer at South Woods, with an address for service of South Woods State Prison, 215 S. Burlington Road, Bridgeton, NJ 08302, and who was responsible for the care, supervision and humane treatment of prisoners confined at South Woods and had an ethical and legal responsibility to pursue his duties diligently with an even hand and to abstain from any conduct which constituted a crime, fraud, malice, abuse of process, abuse of power, physical abuse, obstruction of justice and/or willful misconduct and had direct personal involvement in the wrongs enumerated in this Complaint. Weinstein is a state actor acting under color of state law.

7.      Defendant New Jersey Department of Corrections ("NJDOC") has its administrative headquarters on Whittlesey Road in Trenton, New Jersey, and is a public entity amenable to suit under New Jersey law.

8.      Defendant Marcus Hicks is the Commissioner of the NJDOC.

9.      Defendant Jim Hass is responsible for the Prison Rape Elimination Act ("PREA") compliance unit and has an official position as director of or for policy and planning for the NJDOC.

10.     Defendant Jennifer Malinowski is the NJDOC agency-wide policy and planning commissioner and also a part of the PREA compliance unit and PREA accommodation unit/committee.

11.     Defendant John Powell is the Administrator of South Woods.

12.     Defendant Alexander Solanik is an Associate Administrator at South Woods, and had a duty to ensure all policies were being followed and that all accommodations required by law were provided.

13.     Defendant Luiz Torres is an administrative assistant responsible for investigating claims submitted to the administration as well as the Americans with Disabilities Act coordinator.

14.     Defendant Brown is the Facility 3 Law Librarian at South Woods, and is responsible for ensuring inmates are provided with legal access in accordance with the New Jersey Administrative Code 104:6.

15.     Defendant Speneli is a correctional officer assigned to South Woods.

16.     Defendants John and Jane Does 1-10 are/were individuals who at all times relevant hereto were employed by South Woods, Edna Mahan and/or NJDOC and were

responsible for the care, supervision and humane treatment of prisoners confined at South Woods and/or Edna Mahan and/or the policy making and ensuring that policies and procedures are properly implemented, including, but not limited to, ensuring that prisoners at South Woods and Edna Mahan receive adequate and safe treatment and housing. Said Defendants had an ethical and legal responsibility to purse their duties diligently, with an even hand, and to abstain from any conduct which constituted a crime, fraud, malice, physical abuse, obstruction of justice and/or willful misconduct and/or the cover-up of such conduct, and had direct personal involvement and/or actual knowledge and acquiescence in the wrongs enumerated in this Complaint. Said Defendants are/were state actors acting under color of state law.

## NATURE OF ACTION

17. This is an action against the aforementioned Defendants for inadequate, deliberate indifference, negligence, civil rights violations, retaliation, state intentional infliction of emotional distress, state constitutional claims, eighth amendment violations, and first amendment violations.

## JURISDICTION AND VENUE

18. Congress enacted the Civil Rights Act to redress the deprivation, under color of state law, of rights secured by the laws and Constitution of the United States of America. 42 U.S.C. § 1983. The New Jersey Legislature enacted the New Jersey Civil Rights Act to redress violations of rights secured by the laws and Constitution of the United States and the Constitution of the State of New Jersey. N.J.S.A. 10:6-1 et seq.

## COUNT ONE
### FIRST AMENDMENT VIOLATION; RETALIATION FOR ENGAGING IN A CONSTITUTIONALLY PROTECTED ACTIVITY; DISCRIMINATION; AND DISCRIMINATORY RETALIATION

19. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

20.     In the month of June 2019, while imprisoned at South Woods, Plaintiff engaged in submitting proposals to the South Woods Administration and Custody staff with regards for cell and unit changes as applied to those who identified as transgender.

21.     Plaintiff was assigned a work detail in the prison's law library where her duties consisted of preparing legal documents and drafting statements as well as assisting inmates with research for their cases.

22.     Plaintiff initially began helping inmate Rehaam Dupriest ("Dupriest") with an administrative complaint regarding the way in which inmates who identified as gay, bisexual or transgender were being housed in February of 2019.

14.     Plaintiff drafted a proposal for Dupriest in the months of January and February 2019, which was then forwarded to the Ombudsman's office, an external division of the New Jersey Department of Corrections (the "NJDOC").

15.     Subsequently this proposal was reviewed by the Ombudsman's office and the NJDOC.

16.     The New Jersey Administrative Code permits inmates to help other inmates with legal work.  Specifically, NJAC 10A:6-2.12 (b) states that inmates with the following job titles who have successfully completed the inmate paralegal courses are considered paralegals:

a.      Law library clerk;

b.      Legal assistant; and

c.      Legal paraprofessional.

17.     In the months of June and July 2019, South Woods began having a substantial amount of refusing to lock in charges being issued.  Plaintiff began to work with the paralegals who were assigned to Courtline in efforts to gather more information about the amount of refusing to lock-in charges being issued.

18. Plaintiff learned that custody was refusing to move LGBT inmates into other cells even when they did not feel safe.

19. Defendant Weinstein permitted custody staff to refuse inmates the opportunity to request housing unit changes when they felt unsafe.

20. As a direct result of custody's refusal to consider LGBT inmates for housing changing when safety issues arose, Plaintiff and others were forced to refuse to lock in.

21. A substantial amount of the refusal to lock in charges were issued because of custody's and Defendants Weinstein, Dilks and John Doe's refusal to move inmates.

22. Plaintiff discovered that South Woods was bound by the Prison Rape Elimination Act ("PREA"), a federal mandate that forced prisons to adopt standards that were designed to reduce and prevent sexual assault in prisons.

23. Part of the PREA mandate, 28 CFR Ch. 1 §115.30, compels the prison to screen inmates for risk of victimization and abusiveness during an intake screening.

24. This same PREA mandate forces the prison to consider whether the inmate has a mental, physical or developmental disability; the age of the inmate; the physical build of the inmate; and other criteria including, but not limited to, whether the inmate is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender non-confirming.

25. Plaintiff discovered that the prison was failing to assess inmates who identified as gay, bisexual, transgender, intersex, or gender non-conforming.

26. As a result of South Woods not having a policy and procedure in place to identify and properly house inmates who identified as gay, bisexual, transgender, intersex, or gender non-conforming, such inmates were often preyed upon and not given any kind of consideration as to their sexual orientation.

27.     Custody does not permit inmates who identify as LGBT the opportunity to be considered for cell and unit transfers when they feel as if they are being harassed or fearing their safety.

28.     As a direct result of custody's common practice, inmates who identified as LGBT were being forced to endure abuse and live in constant fear for their lives, with no way to be moved without going to solitary.

29.     Custody has advised inmates that the only way they will be moved from their cells will being by going to solitary confinement.

30.     Because of Defendants Weinstein, Dilks and others' refusal to move inmates or, at the very least, consider inmates for unit or cell changes, inmates such as Plaintiff have been forced to refuse to lock-in, and thus be sent to solitary confinement, in order to be moved from their current housing arrangements.

31.     As a direct result of Defendants Weinstein, Dilks and Khulen's actions, inmates who identify as LGBT have had to endure harassment and at times assault.

32.     Plaintiff began to advocate and write grievance for the inmates she was helping who were LGBT. Many of these inmates were being victimized by their cellmates and lived under constant fear of being sent to solitary if they complained regarding same.

33.     Upon information and belief, inmates who did not report the abuse did not do so because of custody's common practice of sending inmates to solitary simply for requesting to speak to the sergeant.

34.     The statements from custody showed a disregard for inmates' safety and contributed to the constant toleration of sexual abuse and harassment at South Woods.

35.     As a direct result of the actions of Defendants Weinstein, Dilks, Khulen and John Does, inmates who identify as gay, bisexual, transgender, intersex, or gender non-conforming have been forced to live in environments where they are targets.

36.     As a direct result of the actions of Defendants Weinstein, Dilks, Khulen and John Does, Plaintiff, who is openly transgender, has been forced to live in an environment that is by nature homophobic, causing her psychological harm.

37.     Plaintiff has suffered psychological harm, and has had panic attacks as well as nervous break downs.

38.     In June of 2019, Defendant Weinstein became the first shift lieutenant for facility one.  In that capacity, his duties included, but were not limited to, supervising the custody staff in the facility, maintaining safe and secure housing units 1 and 2, and ensuring that all inmates were being treated fairly and with dignity.

39.     Defendant Weinstein replaced Lt. Hayes, who had once granted cell moves to those who had legitimate reasons and so requested.

40.     Defendant Weinstein was made aware of Plaintiff's proposal when Plaintiff mailed it to South Woods' administration.  The proposal included information explaining why those who identified as LGBT were at risk of harm and deserved to be consider for unit transfers.  The proposal also requested that South Woods consider allowing all inmates who remained with positive disciplinary jackets the opportunity to change cells.

41.     Plaintiff attempted to explain to the administration why those who identified as gay, bisexual, transgender, intersex, or gender non-conforming were at higher risk of sexual assault and harassment than other inmates, and requested that the administration consider adding a procedure or policy that could allow cell changes.

42.     Defendant Weinstein responded to the grievance of another inmate, Allen Rivera, regarding not allowing inmates who identified as LGBT to move cells, by saying "Yes, correct, I do not permit cell changes, and what you have written about is not a safety concern."

43.     Plaintiff filed grievances via the Jpay Kiosk system to administration and to central offices with regard to the custody staff's refusal to consider requests for inmates who identified as LGBT to change cells or units when they believed they were being harmed or harassed.

44.     Plaintiff submitted inquires to administration, appealed those inquires and then filed grievances subsequently appealing those inquires pursuant to prison polices.  As such, Plaintiff exhausted all avenues of recourse available through the prison administration and custody staff.

45.     In July 2019, Plaintiff began assisting another inmate with an administrative appeal. The inmate Plaintiff was assisting was placed in a cell with an inmate who identified as gay.  The inmate requested to speak with the sergeant and was denied.  Subsequently, the inmate was placed in solitary for refusing to lock in.

46.     When inmates are having issues with their cell mates and request to speak with a sergeant, they are often denied the right to do so and advised that the only way they will be permitted to change cells will be by going to solitary confinement.

47.     Plaintiff was informed by a second shift officer that another officer, John Doe, who worked in center control, read letters Plaintiff exchanged with other inmates.

48.     Plaintiff then saw Defendant Goncharov, who stated he knew Plaintiff was gay. Goncharov further stated, "I read your mail, and we know you are the one who is doing that proposal for the faggots."

49.     Plaintiff laughed at the officer's comments, in the hopes of deflecting same.

50.     In the following weeks, Plaintiff continued to work on the above-referenced proposal.

51.     Upon information and belief, John Doe correctional officer was reading through the outgoing mail, and learned about Plaintiff's sexual orientation.

52.     John Doe officer made calls to other unit officers about Plaintiff in the hopes of provoking some kind of incident.

53.     Plaintiff informed Goncharov that regardless of her sexuality, she should not be targeted by officers and that officers should not worry about what she was doing or who she was helping.

54.     Defendant Goncharov was the same officer who read things in Plaintiff's mail that gave him the impression that Plaintiff was gay.

55.     As a direct result of Defendants Goncharov's actions, Plaintiff began to receive harassment from other John Doe officers.

56.     Defendant Goncharov's actions violated the departmental policy regarding officer conduct.

57.     The following day, Plaintiff was made aware by other inmates that Sergeant Dilks came to the library and informed inmates about Plaintiff's sexually orientation.

58.     Sgt. Dilks came to the library and told Plaintiff and another inmate to keep their hands above their head, claiming that he knew faggots like to touch each other.

59.     Sgt. Dilks, along with his co-conspirators, began to target Plaintiff because of her identification as LGBT.

60.     A John Doe corrections officer informed Sgt. Dilks that Plaintiff was gay and that she was attempting to ask administration to consider a process that would also help those who identified as gay, bisexual, transgender, intersex, or gender non-conforming to be able to move to safer locations pursuant to PREA.

61.    The John Doe corrections officer told Plaintiff that he would make first shift aware of Plaintiff being gay, saying, "Don't think that this is going to stay a secret."

62.    Plaintiff had never revealed her sexual orientation to anyone.  After Defendant Goncharov made Sgt. Dilks aware of same, Sgt. Dilks began to target Plaintiff because of her advocacy work on behalf of other inmates.

63.    Plaintiff continued assisting inmates with the grievances they were filing.

64.    On August 26, 2019, Defendant Weinstein retaliated against Plaintiff for helping other inmates and instructed Defendant Khulen to move Plaintiff to another unit where another gay inmate was housed.  This move was referred to as the "faggot swap."

65.    Upon returning to her housing unit from her prison job, Plaintiff was informed that her boyfriend was coming to the unit and that Plaintiff was going to be moved to the unit where he had been housed.

66.    Plaintiff requested to speak with the sergeant, but was denied.  Plaintiff then informed the unit officer, Battia, that she wished to file a PREA complaint.

67.    Plaintiff's unit officer informed her, "You cannot file any of that gay shit and you are being ordered to move, do you wish to refuse this assignment?"  Plaintiff responded, "No."

68.    Plaintiff returned to her cell with trash bags in which to load her property.  At that time, Plaintiff noticed the unit sergeant, Defendant Khulen, coming in and requested that she be permitted to file a PREA complaint.

69.    Defendant Khulen asked Plaintiff what the subject of her PREA complaint was.  Plaintiff stated she felt she was being targeted because of her sexuality.

70.    As a direct result of Defendants Dilks, Khulen and John Doe's actions, Plaintiff was moved to a more restrictive unit where she was subjected to homophobic slurs and harassment.

71.     As a direct result of Defendants Weinstein and Khulen, Plaintiff was deterred from using the Jpay system, and from filing complaints about sexual assault.

72.     Plaintiff informed the sergeant that she knew she was only being moved because of the fact that she had written grievances.

73.     Defendant Khulen told Plaintiff that she was not being targeted and that the reason for his move was random, and simply because of the fact that custody needed a bed.

74.     During this entire process, there were three beds open on the unit, and there was only one bed on the unit where Plaintiff was going.

75.     The temporal proximity between Plaintiff starting her constitutionally protected activity and the beginning of the above-referenced retaliatory moves is close and clear.

76.     After being denied the opportunity to file a PREA complaint, Plaintiff told Defendant Khulen that this is the way PREA complaints are supposed to be initiated, and that Plaintiff was doing the right thing.  Defendant Khulen responded that he and Plaintiff had not spoken about anything and that they were only having a general conversation.

77.     Upon information and belief, Defendant Khulen was telling Plaintiff that if she tried to claim she was denied the opportunity to file a PREA complaint, Defendant Khulen would claim he never heard Plaintiff.

78.     Plaintiff then went to her cell and crafted a sign that read "I need to file a PREA complaint."

79.     The unit officer immediately called a "sergeant report" through his radio, causing the facility one compound to be locked down and 15-20 officers to arrive on the unit.

80.     Plaintiff, who was up by her room, was ordered to get on her knees by Defendant Khulen.

81.     Following this incident, Plaintiff was handcuffed and escorted to the holding tank where she was ordered to remain in a dry cell, which had no working accessible plumbing.

82.     After about an hour, Plaintiff was interviewed by mental health, who stated they were following up on a PREA complaint.

83.     Plaintiff explained that she had been assisting another inmate with grievances and a proposal for the LGBT community when she became be the target of retaliation by Defendants Dilks and John Doe correctional officers.

84.     Plaintiff explained that after helping another inmate who identified as gay, she was threatened and told that if she did not stop she would face consequences.

85.     Plaintiff explained that when the inmate whom she was helping got approved for a housing reassignment, Plaintiff became the focus of retaliation.  In addition, Plaintiff summarized that Defendants Khulen, Dilks and Weinstein conspired to play a joke on Plaintiff by removing her from her unit (11R) and moving her to another housing unit (21R).

86.     Plaintiff was unable to explain all of her PREA complaints out of fear that she would be retaliated against for her statement.

87.     Defendant Khulen was present while Plaintiff was filing her PREA complaint with the mental health clinician.

88.     Plaintiff was eventually seen by South Woods' special investigations division ("SID"), which gave Plaintiff more confidentiality.  Plaintiff explained that custody was abusing their official duties by targeting Plaintiff for her sexuality.  Plaintiff explained that she was moved and targeted because of the fact that she helped another inmate with his grievances which subsequently led to her being moved to unit 11R.

89.     After spending 5 hours in the holding tank, with no opportunity to use the bathroom, Plaintiff slightly urinated on herself.

90.     Plaintiff made multiple requests to Defendants Khulen and Weinstein to use the bathroom, asking that Defendants remove the pad-locks from the toilet so that Plaintiff could use the bathroom.

91.     Defendant Khulen laughed and said you will be alright.

92.     Plaintiff suffered pain from holding her urine for so long.

93.     After 5 hours, Defendant Khulen came to Plaintiff to advise her that she would be moved to 21R.

94.     Defendant Dilks was in the control booth, picking a cell for Plaintiff, when he said, "Oh, I got an idea.  Let's kill two birds with one stone.  1089. Muslim."

95.     Upon information and belief, Defendant Dilks was aware that the inmate who was in cell 1089 was Muslim and a member of the bloods gang, which could increase the likelihood of conflict between the inmate and Plaintiff, who identified as LGBT.

96.     Defendant Weinstein proceeded to tell Plaintiff that she was going to be moved to 21R. Defendant Weinstein stated, "SID has cleared all of this.  I still win and you're going to pay for helping that punk.  Your property is being packed up you are not permitted to go to your prior unit."

97.     Plaintiff's property was packed by another inmate.  The officer failed to make sure that all of Plaintiff's property was secured and as a result, Plaintiff's radio was stolen along with $200.00 worth of commissary, including, but not limited to, soaps, food and clothes.

98.     Plaintiff's computer monitor and word processor were also damaged and are now in need of repair.

99.     Plaintiff was advised by other inmates that Sergeant had told other inmates that Plaintiff was going to detention and that she was a sick homo.

100.    Unbeknownst to the inmate population, Plaintiff was returning to the compound, yet relocating to another unit.

101.    As a result of the relocating to a new unit, Plaintiff, who is on the special needs roster, was unable to socialize in the same environments.

102.    As a direct result of Defendants' actions, Plaintiff was forced to live in constant fear and suffer psychological harm.

103.    South Woods is divided into 3 different compounds, which can run independently and separate from each other. As one of the state's largest prisons, the three facilities separate inmates, preventing an inmate who is in one facility from seeing other inmates.

104.    Each facility contains 2 housing buildings, each holding 124 inmates. Each housing unit has separate yards and separate programs. As such, if an inmate is moved from house 1 to house 2, he will not be in the same social environment.

105.    For Plaintiff and others on the special needs roster, a social environment can contribute to their treatment plan or become counterproductive to the inmates' rehabilitation.

106.    Plaintiff had been engaged in treatment of mental health issues, including sexual abuse and symptoms of PTSD, for almost 2 years. However, Plaintiff was not experiencing any panic attacks.

107.    After being moved to this new unit, Plaintiff was not able to sleep, and had headaches and panic attacks in the yard.

108.    Plaintiff was shouted at by the unit officers while doing laps in the yard. Plaintiff also had to endure homophobic slurs from other inmates.

109.    Plaintiff was living in constant fear because of the false rumors that were spread by the custody officials.

110.    On January 27, 2020, Plaintiff was placed under investigation for writing letters.

111.     While the investigation was pending, Plaintiff was placed in solitary confinement on a temporary basis.

112.     Plaintiff was ultimately cleared of the allegations against her in connection with writing letters.

113.     While Plaintiff should have been returned to her same housing unit and job responsibilities, she was instead transferred to Facility 3 and relieved of her job responsibilities.

114.     Plaintiff's personal property was also stolen during this time.

115.     As a result of being moved to Facility 3, Plaintiff's access to mental health services was severely restricted.

116.     As a result of being moved to Facility 3, Plaintiff no longer received the 1-on-1 sessions with a special education teacher she was receiving prior to being moved.

117.     After being moved to Facility 3, Plaintiff was subjected to harassment on the basis of her LGBT status.

118.     After being moved to Facility 3, Plaintiff received a letter from an inmate who had previously assaulted another inmate, in which that inmate expressed a desire to engage in sexual acts with Plaintiff.

119.     In May of 2020, Plaintiff was assaulted by another inmate and gang member, who entered Plaintiff's cell and struck her in the face, head and back.  As a result, Plaintiff suffered bruising, cracked teeth and loose teeth.

120.     After an investigation by SID, it was determined that Janae Young, a prison guard, gave the inmate access to Plaintiff's cell and permission to assault Plaintiff.  As a result, the inmate was charged and Janae Young was fired.

121.    The above-referenced assault occurred because of Plaintiff's LGBT status and in retaliation for her above-referenced work on behalf of the LGBT community and filing of grievances.

122.    Defendants Weinstein, Dilks and Khulen targeted Plaintiff based on her constitutionally protected activity.

123.    Defendants Weinstein, Dilks and Khulen did not think Plaintiff would announce her LGBT status, and thus thought they would get away with this.

124.    Defendant Weinstein was the supervisor for Defendants Dilks and Khulen. As such, Defendant Weinstein had a duty to ensure that inmates were being treated fairly and not being retailed against for filing grievances.

125.    Plaintiff had a protected liberty interest to be free from retaliation for filing grievances.

126.    Plaintiff's State-created liberty interest to be protected from retaliation is within NJAC 10A:1-4.4(b)

> i. (b) The submission of an Inmate Inquiry Form," Inmate
> Grievance Form," and/or Administrative Appeal shall
> not result in cause for coercion, punishment,
> retaliation, reprisal, or retribution against any
> individual.

127.    The aforementioned unlawful pattern and practice of misconduct at South Woods is flaunted with impunity; is unlawful and unethical; is outside the color of the law and strikes directly at the core of the United States Constitution; is unbecoming of a corrections officer; and constitutes egregious

conduct which betrays the public trust and stains the integrity of South Woods and the NJDOC as a whole.

128.     On August 28, 2020, Plaintiff was transferred from South Woods to Edna Mahan, where she is now housed and labeled according to her gender identity.  However, this was only after she suffered the above-referenced discrimination, retaliation and resulting harm.

129.     Subsequent to her transfer to Edna Mahan, Plaintiff was mis-gendered and called a faggot by one of the other inmates.  While Plaintiff filed a PREA complaint as a result, no action was taken by John Doe prison officials, guards and employees.

130.     Subsequent to her transfer to Edna Mahan, Plaintiff requested a housing change from North Hall to another unit.  However, she was informed by prison officials that because she is transgender, she is only permitted to reside in North Hall.

131.     Plaintiff respectfully requests that Defendants cease and desist any further discrimination, retaliation, including retaliatory transfers, harassing and retaliatory searches of Plaintiff's person or property, unlawful seizure or destruction of Plaintiff's property, unprovoked assault or physical abuse, further falsification of disciplinary charges against Plaintiff, arbitrary and capricious removal of Plaintiff's institutional law library job, indifferent treatment, and arbitrary or capricious denials of Plaintiff's rights or privileges where legitimate penological interest is lacking.

132.     148:     Defendants' wrongful acts and omissions constitute a violation of Plaintiff's rights under the New Jersey Constitution.

133.     Plaintiff has suffered injuries as a result of Defendants' acts and omissions, for which Defendants are liable in their individual capacities in an amount to be proved at trial.

134.     The injuries suffered by Plaintiff as a result of Defendants' acts and omissions are of a continuing nature, and for which there is no adequate remedy at law.

135.    Plaintiff has consistently filed grievances concerning the wrongdoing described above and has exhausted all available administrative remedies.  Those grievances and appeals have been routinely denied without reasonable consideration or investigation.  In numerous instances, the grievances officers, and their superiors upon appeal, have failed to make even minimal efforts to investigate Plaintiff's complaints, and have instead simply denied Plaintiff's grievances without any investigation whatsoever or accepted without question the testimony of the correctional officer and other NJDOC employees.  As operated, the grievance system is fundamentally unfair, operating to rubber stamp the actions taken by correctional officers in violation of the statutory rights of prisoners.

136.    John Doe defendants had the authority to move inmates who identified as LGBT when safety concerns arose.

137.    John Doe defendants failed to implement policies that comported with the PREA standards.

138.    John Doe defendants were in violation of the PREA standard for failing to ensure that all inmates were properly assessed for their vulnerability as LGBT inmates.

139.    While PREA does not provide a private right of action, Defendants' combined conduct has violated Plaintiff's eighth amendment right to free from cruel and unusual punishment.

140.    On August 10, 2019, Plaintiff was interviewed by SID.  Multiple letters and Jpay massages were the focus of the investigation.  See Attachments.

141.    Plaintiff incorporates as if set forth at length herein the claims and allegations contained in her Complaint in the consolidated matter, Case No. 1:20-cv-08601-RMB-AMD, a copy of which is attached hereto as Exhibit "A".

WHEREFORE, Plaintiff demands judgment against each of the Defendants, in their individual and official capacities, jointly, severally and in the alternative, or such of them as may be determined to be liable, for the following relief:

1. Compensatory damages;

2. The costs of this action, including reasonable counsel fees and costs;

3. Punitive damages; and

4. Such other and further relief and as may be proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable herein.

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other action or arbitration proceeding now pending or contemplated, and that no other party should be joined in this action accept for additional Defendants as may be discovered in the future.

CAPEHART & SCATCHARD, P.A.
A Professional Corporation

Dated: May 14, 2021                    By:    *s/ Betsy G. Ramos*
                                              Betsy G. Ramos, Esq.
                                              Attorneys for Plaintiff