**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DEMETRIUS MINOR,

                Plaintiff,

                v.

SGT. DAVID DILKS, et al.,

                Defendants.

Civil Action No. 19-18261 (KMW) (AMD)

**OPINION**

**WILLIAMS,** District Judge:

This matter comes before the Court on the moving Defendants'[1] motion to dismiss (ECF No. 67) Plaintiff's Second Amended Complaint (ECF No. 43) in this prisoner civil rights matter. Plaintiff filed a response to the motion (ECF No. 70), to which Defendants replied. (ECF No. 71.) For the following reasons, the moving Defendants' motion shall be granted.

## I.    BACKGROUND

Plaintiff is a biological male who was born in 1995. (ECF No. 43 at 6.) In 2019, while serving a thirty-seven year manslaughter sentence in South Woods State Prison, Plaintiff informed prison staff that Plaintiff identified as transgender. (*Id.* at 6-8.) Following a formal diagnosis with gender dysphoria in 2020, Plaintiff began requesting hormone therapy, surgery, and the provision of feminine items in furtherance of Plaintiff's desire to live as a "transgender woman." (*Id.*) Following this expression, Plaintiff contends that prison staff denied Plaintiff female commissary

---

[1] In using the term "moving Defendants" in this opinion, this Court only refers to the following: Defendants Hicks, Brown, Goncharov, Matish, Solanik, Torres, Young, Malinowski, Powell (*see* ECF No. 82), and the New Jersey Department of Corrections.

items, referred to Plaintiff as a man, and continued to place Plaintiff in cells with men at South Woods State Prison. (*Id.* at 8.) Plaintiff believes that the denial of female commissary items is improper as women housed in female prisons are permitted to purchase those items. (*Id.* at 8.) Plaintiff contends that Defendants Hass, Solanik, and Powell specifically denied Plaintiff the ability to purchase these commissary items. (*Id.* at 9.)

In January 2020, Plaintiff requested to be housed with another inmate who was either "gender non-conforming . . . or transgender." (*Id.*) Solanik "through his designee" denied this request. (*Id.*) This denial occurred because the facility determined that the other inmate was improper in light of the charges that this inmate had accrued, though it is not clear what these charges are. (*Id.* at 13.) Plaintiff asserts that thereafter, Plaintiff's cellmates imposed "humiliation[,] harassment[,] and targeting" upon Plaintiff, which exacerbated Plaintiff's mental health issues. (*Id.* at 9.) These comments include derogatory and harassing name calling, and being referred to as a "he/she" or an "it." (*Id.*) Plaintiff reported one instance of sexual harassment to prison staff, but the only apparent result was a disciplinary charge Plaintiff received for making a prohibited 3-way call which Plaintiff admitted to doing. (*Id.* at 10.)

Plaintiff admits in the second amended complaint that the New Jersey prison system has adopted various policies requiring respectful treatment of those identifying as transgender, including policies which permit such inmates to "request correctional facility housing based on gender identity that differs from the inmate's sex." (*Id.* at 13.) Plaintiff contends, however, that the prison did not make these policies known to Plaintiff or others, and that it is improper for such requests to consider "inappropriate" factors such as mental health history, criminal history, medical history, and the likelihood the inmate will perpetrate abuse if rehoused. (*Id.*) As of the filing of the second amended complaint, Plaintiff contended that no such inmates had been transferred under the policy. (*Id.* at 14.) Contrary to that assertion, however, Plaintiff explicitly

admits in the second amended complaint that Plaintiff is currently housed in a prison for women – the Edna Mahan Correctional Facility for Women. (*Id.* at 1.)

In June 2019, Plaintiff began submitting proposals for new policies for the housing of inmates such as Plaintiff. (*Id.* at 15.) At that time, Plaintiff was working in the prison's law library. (*Id.* at 15.) As part of that effort, Plaintiff began filing grievances both for and on behalf of "LGBT inmates" who were receiving disciplinary charges for not locking in their cells, which Plaintiff contends occurred because these inmates "felt unsafe" in their cells and were not moved to new housing. (*Id.* at 16.) These grievances did not produce results Plaintiff felt were satisfactory. (*Id.* at 18.) Plaintiff contends that being denied reassigned housing by Defendants Weinstein, Dilks, Khulen, and John Does places Plaintiff at risk due to the "homophobic" nature of prison confinement with other men, which caused Plaintiff psychological harm. (*Id.*)

In June 2019, Plaintiff brought his housing proposal to Defendant Weinstein. (*Id.*) Weinstein denied transfers to other inmates as he did not believe they had safety concerns warranting a cell change. (*Id.* at 19.) Plaintiff filed grievances regarding this issue. (*Id.*) Plaintiff's advocacy resulted in him being told by Defendant Goncharov that he "knew" that Plaintiff was responsible for the grievances, and Plaintiff being called a homophobic slur. (*Id.* at 20.) Defendant Dilks thereafter made a snide and homophobic remark to Plaintiff and another inmate while they were working in the law library. (*Id.* at 20-21.) On August 26, 2019, Plaintiff was transferred to another housing unit by Weinstein, being forced to switch cells with "another gay inmate," which resulted in Defendant Khulen also making homophobic remarks to Plaintiff. (*Id.* at 21.) Plaintiff contends that this transfer moved Plaintiff to a "more restrictive unit," though Plaintiff provides little detail to that affect, and subjected Plaintiff to "homophobic slurs and harassment." (*Id.* at 22.) Plaintiff complained to Khulen that the move was discriminatory and a result of filing grievances, but was told that the move "was random, and simply because of the fact

that custody needed a bed." (*Id.*) Khulen allegedly also turned a deaf ear to Plaintiff's desire to file a claim under the Prison Rape Elimination Act regarding the move. (*Id.*)

Plaintiff then went back to a cell and placed a sign on the cell stating that Plaintiff wanted to make a PREA complaint. (*Id.* at 23.) Plaintiff was moved to a holding cell and was interviewed by mental health who told Plaintiff they were following up on Plaintiff's PREA complaint. (*Id.*) Following the complaint, Plaintiff met with the prison's Special Investigations Division, at which time Plaintiff told the SID that Plaintiff was being transferred and targeted as retaliation for filing grievances. (*Id.*) Plaintiff remained in the dry holding cell for five hours, and was not provided bathroom access by Khulen, and thus "slightly urinated," wetting Plaintiff's clothing and causing pain and discomfort. (*Id.*) After the five hours, Plaintiff was taken to the new prison unit and placed in a cell with a prisoner who was a "Muslim and member of the bloods gang" by Defendant Dilks, purportedly to "kill two birds with one stone." (*Id.* at 24) Plaintiff also asserts that Weinstein told Plaintiff that he "still won" in the transfer and that Plaintiff would "pay" for helping another inmate. (*Id.* at 25.) Plaintiff's belongings were also packed and moved by other inmates, who damaged some of the property. (*Id.* at 25-26.) Plaintiff contends that being placed in this new cell contributed to sleep loss and other mental health issues, and resulted in receiving numerous homophobic slurs from other inmates. (*Id.* at 26.)

On January 27, 2020, Plaintiff was suspected of committing a disciplinary infraction and was temporarily placed in solitary confinement with the approval of defendant Solanik. (*Id.* at 26, 36.) This placement resulted in Plaintiff spending "80 hours" in a cell without clothing or shower access, although Plaintiff was seen by mental health staff. (*Id.* at 36-37.) Plaintiff was cleared of the charges, but was thereafter moved to a new unit, causing Plaintiff to lose the prison library job. (*Id.* at 26) Plaintiff also had some property stolen. (*Id.*) Plaintiff was thereafter subjected to harassment by other inmates, and in May of 2020 was assaulted by an inmate, resulting in the

assaulting inmate being punished and the officer who permitted the inmate access to Plaintiff being fired. (*Id.* at 27.) Plaintiff was thereafter moved to Edna Mahan in August 2020. (*Id.* at 28.)

In addition to asserting retaliation claims related to the treatment received by individual officers, Plaintiff also asserts that various requests for reassignment and transfer to a female prison were ignored or denied by Defendants Hicks, the commissioner of the NJDOC; Hass, the NJ DOC's PREA compliance officer; Malinowski, a DOC planning commissioner; Solanik, the associate administrator of South Woods; and Powell, the prison administrator for South Woods. (*Id.* at 33-37.) This left Plaintiff in a single occupancy cell. (*Id.* at 32.) It is not entirely clear how these supervisory Defendants were involved in the denial of transfers or specific placement decisions, although Plaintiff contends that they were aware of Plaintiff's placement and did not move Plaintiff to a female prison at Plaintiff's initial request. (*Id.* at 32-37.) Plaintiff contends that the failure of these Defendants to move Plaintiff to the placement of Plaintiff's choosing amount to both a denial of Due Process insomuch as Plaintiff was not made aware of the policy permitting transfer to a woman's prison and a denial of Equal Protection insomuch as Plaintiff was not treated the same as female inmates at female prisons. (*Id.* at 38-40.)

## II.   **LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal

conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

## III.   DISCUSSION

Defendants first contend that the New Jersey Department of Corrections and Defendants to the extent they are named in their official capacity, are not subject to suit in this matter. Arms of the state, such as a state Department of Corrections or a state prison are not subject to suit in a civil rights matter before this Court both because they are not "persons," the only class of defendants available in a civil rights suit under 42 U.S.C. § 1983, and because they are entitled to Eleventh Amendment immunity. *See, e.g., Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013); *Walker v. Beard*, 244 F. App'x 439, 440-41 (3d Cir. 2007); *Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989). As "a suit against a state official in his or her *official* capacity is not a suit against the official but rather is a suit against the official's office," state officials are likewise immune under the Eleventh Amendment for claims seeking damages against them in their official capacities. *Grohs v.*

6

*Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013). As Plaintiff seeks only money damages in the second amended complaint, and does not seek injunctive relief, all of Plaintiff's claims against the Department of Corrections and against the individual Defendants in their official capacities must be dismissed with prejudice. *Id.*

Defendants assert that Plaintiff's claims against them must be dismissed as Plaintiff failed to plead an adequate basis for relief against them. A defendant may only be held liable in a federal civil rights matter where he had personal involvement in the alleged wrongs. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Since a supervisor may not be held vicariously liable for the actions of his subordinates, a supervisory defendant will therefore only be subject to a civil rights suit where he was directly involved in the alleged violation, directed others to engage in the alleged improper conduct, or had *actual* knowledge of the alleged wrong and acquiesced in its occurrence. *Chavarriaga v. N.J. Dep't of Corr.,* 806 F.3d 210, 222 (3d Cir. 2015).

The moving Defendants first contend that Plaintiff's retaliation claims against them must be dismissed because Plaintiff fails to plead a plausible First Amendment retaliation claim as to any moving Defendant. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Defendants first contend that Plaintiff has pled no facts regarding Young's motive or connecting Young's involvement in an assault by another inmate upon Plaintiff to any protected activity sufficient to warrant a retaliation claim. While Plaintiff's complaint certainly suggests that Plaintiff *may* have a claim against Young on a different basis, Plaintiff's complaint does not connect that failing to any protected activity. Plaintiff's retaliation claim against Young must therefore be dismissed without prejudice.

Defendants next contend that Plaintiff's retaliation claim against Defendant Goncharov must be dismissed for failure to state a claim. Although Plaintiff does plead facts suggesting that Goncharov may have read Plaintiff's mail and may have made some unwelcome comments regarding Plaintiff's sexuality, Plaintiff does not plead that Goncharov's actions were retaliatory in nature or were responsive to some active protected activity. While Goncharov's alleged comments and actions were certainly disrespectful, Plaintiff has failed to plead that they amount to an actionable claim of retaliation, and those claims are dismissed without prejudice as a result.

Defendants also contend that, while Plaintiff has pled a retaliation claim against the non-moving Defendants who are at the center of Plaintiff's retaliation claim, Plaintiff has failed to plead adequate facts to show retaliation by the other moving Defendants, and any retaliation claim must be dismissed. As noted by Defendants, Plaintiff makes scant allegations against most of the moving Defendants – noting only that they referred to Plaintiff as a "man," harassed Plaintiff, told Plaintiff that Plaintiff was being given what Plaintiff had requested, or in the case of Defendants Torres and Matish, the complaint contains no allegations connected to Plaintiff's retaliation claim whatsoever. Defendants are also correct that Plaintiff connects the supervisory Defendants – Hicks, Powell, Solanik, Malinoski, and Hass – to the retaliation claims only through claims of respondeat superior – i.e., their failure to properly oversee their subordinates – or through allegations that Plaintiff filed grievances and complaints of which these Defendants became aware. Such allegations are insufficient to form a valid basis for a retaliation claim – Plaintiff pleads no facts supporting a causal connection between Plaintiff's complaints and advocacy and these Defendants' actions, nor any clear retaliatory actions by these Defendants. That they denied transfers or the like, absent some clear connection beyond a mere conclusory allegation to a

retaliatory motive,[2] does not support a claim of retaliation. *Thomas*, 463 F.3d at 296. As Plaintiff has failed to plead a valid retaliation claim against any moving Defendant, Plaintiff's retaliation claim is dismissed without prejudice as to all moving Defendants.

Defendants next contend that Plaintiff's equal protection claim must be dismissed as Plaintiff has failed to allege a similarly situated individual who is being treated differently. To state a claim for a violation of equal protection, a plaintiff must plead facts showing the plaintiff was "treated differently from other similarly situated [persons], and that this different treatment was the result of intentional discrimination based on his membership in a protected group." *Watlington ex. rel. FCI Schuylkill African Am. Inmates v. Reigel*, 723 F. App'x 137, 139 (3d Cir. 2018). Alternatively, an individual can also proceed on an equal protection claim under a "class of one" theory where he does not allege discrimination based on his belonging to a protected class but instead by showing that he was treated differently from others similarly situated without a rational basis for this difference. *See, e.g., Wofford v. Lanigan*, No. 14-5723, 2015 WL 9480016, at *5 (D.N.J. Dec. 28, 2015) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 563 (2000)). Here, Plaintiff's claim is essentially that Plaintiff was not treated the same as female prisoners housed in female prisons while housed at South Woods. Even putting aside biological differences which may make doing so more difficult, Plaintiff does not identify any specific female prisoner who was in a similar situation to Plaintiff and was treated differently. As mere allegations of

---

[2] While Plaintiff provides some conclusory allegations to the effect that Defendants Solanik and Powell retaliated as a result of complaints and policy proposals, Plaintiff doesn't actually connect them to retaliatory activity or motive in a non-conclusory fashion. Although Plaintiff states that Plaintiff lost a library job, Plaintiff asserts that this was the result of a prison transfer resulting from the machinations of non-moving Defendants and doesn't provide adequate allegations of what involvement these Defendants had in the moves. Likewise, although Plaintiff contends that Solanik "authorized" Plaintiff's placement in solitary confinement, this placement was the result of a disciplinary charge and Plaintiff does not adequately plead facts indicating that it was the result of a retaliatory motive or connected to protected activity.

profiling or bigoted views by prison staff are insufficient to make out an equal protection claim, and the failure to identify other similarly situated individuals who were treated differently is fatal to such a claim, Plaintiff's equal protection claim must be dismissed as to the moving Defendants without prejudice. *Watlington*, 732 F. App'x at 139.

Putting that issue aside, the Court further notes that many of the issues Plaintiff connects to the equal protection claim are either the result of the actions of Defendants' subordinates or prisoners, or are the result of actions which do not appear to be related to Plaintiff's transgender status. Specifically, the Court notes that many of Plaintiff's equal protection related claims are the result of the supervisory Defendants allegedly failing to prevent prison guards and inmates from using slurs against Plaintiff or from referring to Plaintiff by terms with which Plaintiff does not associate. Such allegations amount to little more than an improper *respondeat superior* claim, and must be dismissed for that reason as well.[3] The Court further notes that the remaining allegations against the moving supervisory Defendants are, per the second amended complaint, the ancillary results of disciplinary charges, cell transfers following Plaintiff's own requests for transfers, albeit not to units or cells Plaintiff desired, or the slow process of policy adoption. While the Court understands that Plaintiff may have been unhappy with the transfers and the prison jobs or opportunities lost as part of the process, these ancillary consequences are insufficient to make out an equal protection claim against the supervisory Defendants, especially where, as here, Plaintiff fails to clearly identify what Defendants were involved in which decisions or had the power to impose the requested changes and instead intermixes allegations of direct involvement with

---

[3] The Court further notes that the use of slurs or harsh language or other degrading terms, standing alone, is generally not sufficient to make out a constitutional claim. *See, e.g., Richardson v. Sherrer*, 344 F. App'x 755, 757 (3d Cir. 2009); *Salley v. Pa. Dep't of Corr.*, 181 F. App'x 258, 266 (3d Cir. 2006); *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999).

improper vicarious liability allegations. In light of these issues, and Plaintiff's failure to clearly identify individuals who are similarly situated, Plaintiff's equal protection claims must be dismissed without prejudice at this time as to the moving Defendants.

Defendants next contend that they are entitled to qualified immunity as to Plaintiff's Due Process claim which relates to Defendant's alleged failure to move Plaintiff either to a female prison or to being housed with another transgender inmate in what Plaintiff considers to be a timely fashion, and for using factors in such a decision that Plaintiff considers irrelevant such as medical and mental health history, and likelihood of perpetrating abuse in the event of a transfer.[4] "The doctrine of qualified immunity shields government officials who perform discretionary functions

---

[4] Although Plaintiff makes mention of being housed in solitary confinement for a few days during a disciplinary proceeding and being placed in a dry cell without rest room access for five hours during the PREA complaint incident, Plaintiff does not make those the subject of the Due Process claim raised in the second amended complaint. Even had Plaintiff done so, however, neither of those events would amount to a denial of due process. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 485-86 (1995) (placement in solitary confinement for brief periods as long as six months or other non-dramatic departures from basic prison conditions does not give rise to a protected liberty interest sufficient to support a Due Process claim); *Cook v. Wetzel*, No. 13-6575, 2015 WL 2395390, at *5 (E.D. Pa. May 20, 2015) (the denial of access to a lavatory serves as a basis for a constitutional claim only where it "is unconscionably long or where it constitutes an ongoing feature of an inmate's confinement"). Likewise, that Plaintiff was transferred within the prison, lost a prison job or had property improperly damaged or lost in contravention of standard prison policies do not support claims of Due Process violations. *See, e.g., Watson v. Sec'y Pennsylvania Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (prisoners ""do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection"); *Johnson v. Burris*, 339 F. App'x 129, 130 (3d Cir. 2009) (prisoners have no protected interest in any specific level of custody or prison unit within a prison); *Love v. New Jersey Dep't of Corr.*, No. 14-5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015) (deprivation of property without authorization does not support a Due Process claim where post-deprivation process, such as use of the N.J. Tort Claims Act, is provided). The Court finally notes that, as prisoners have no right to a prison grievance system, it is not a constitutional violation that Defendants did not respond to grievances or did not provide the relief Plaintiff requested through grievances. *See, e.g., Roberts v. Aviles*, No. 10-5916, 2012 WL 603790, at *1 n. 4 (D.N.J. Feb. 16, 2012); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa.), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state").

'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, (2011)). In determining whether immunity applies, courts use a two pronged test: "a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right'[, a]nd second, the Court must determine 'whether the right at issue was clearly established at the time of [the] defendants alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

For a claim to be clearly established, "existing precedent [must have] placed the . . . constitutional [right in] question *beyond debate.*" *Id.* at 638. With the exception of cases involving "obvious violations" of prior Supreme Court rulings, a plaintiff's claim will only be "clearly established" where "the violative nature of the *particular* conduct [was] clearly established." *James v. New Jersey State Pol.*, 957 F.3d 165, 169 (3d Cir. 2020). The conduct in question must therefore be defined at an "appropriate level of specificity," *Spady*, 800 F.3d at 638, and, when so defined, the plaintiff must identify "a case where an officer acting under similar circumstances . . . was held to have violated" the constitutional provision in question. *James*, 957 F.3d at 169-70. For the purposes of this analysis, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals" in effect at the time of the conduct in question. *Id.* at 170.

Here, the alleged violation in question is Defendants' failure to immediately transfer Plaintiff to a female prison or housing with other transgender inmates when Plaintiff told officials that Plaintiff was transgender without considering factors beyond self-identification. This Court

is aware of no Supreme Court decision, binding Third Circuit case, or clear consensus of circuit courts establishing a right to any such result in 2019 or 2020.  What few cases do exist on the issue of the appropriate prison placement of transgender inmates suggest that no such clearly established right exists.  *See, e.g., Guy v. Espinoza*, No. 19-498, 2020 WL 309525, at * 5 (E.D. Cal. Jan. 21, 2020) ("there is not any clearly established law determining the appropriate classification and housing of transgender inmates").  As there is no clearly established law supporting a Due Process claim premised on the alleged failure to transfer a transgender inmate to a female facility or to a unit only with other transgender inmates, Plaintiff has failed to show that the Due Process claim raised in the second amended complaint asserts a clearly established constitutional right. Defendants are therefore entitled to qualified immunity as to Plaintiff's Due Process claims, and those claims must be dismissed as a result.

## IV.   **CONCLUSION**

In conclusion, Defendants' motion (ECF No. 67) is **GRANTED**, Plaintiffs' official capacity claims and claims against the New Jersey Department of Corrections are **DISMISSED WITH PREJUDICE**, and Plaintiffs' remaining claims against the moving Defendants are **DISMISSED WITHOUT PREJUDICE**.  An appropriate order follows.

_____
Hon. Karen M. Williams,
United States District Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DEMETRIUS MINOR,

        Plaintiff,

        v.

SGT. DAVID DILKS, et al.,

        Defendants.

Civil Action No. 19-18261 (KMW) (AMD)

**ORDER**

    This matter having come before the Court on the motion to dismiss (ECF No. 67, Michael Vomacka, Deputy Attorney General, appearing) filed by Defendants Hicks, Brown, Goncharov, Matish, Solanik, Torres, Young, Malinowski, Powell (*see* ECF No. 82), and the New Jersey Department of Corrections, this Court having considered the motion, the record of proceedings in this matter, Plaintiff's response (ECF No. 70, Betsy Ramos, appearing), and Defendants' reply (ECF No. 71), and for the reasons expressed in the accompanying opinion,

    **IT IS** on this 15th day of August, 2022,

    **ORDERED** that Defendants' motion (ECF No. 67) is **GRANTED**; and it is further

    **ORDERED** that Plaintiffs' official capacity claims and claims against the New Jersey Department of Corrections are **DISMISSED WITH PREJUDICE**; and it is further

    **ORDERED** that Plaintiff's remaining claims against Defendants Hicks, Brown, Goncharov, Matish, Solanik, Torres, Young, Malinowski, and Powell are **DISMISSED WITHOUT PREJUDICE**; and it is finally

**ORDERED** that the Clerk of the Court shall serve a copy of this Order and the accompanying opinion upon the parties electronically.

Hon. Karen M. Williams,
United States District Judge

2